In re Charles W. KLAYER, Debtor.

**AVERY FEDERAL SAVINGS & LOAN ASSOCIATION, Plaintiff,**

**Bankers Trust and Mortgage Company, Plaintiff in Intervention,**

v.

**Charles W. KLAYER, Defendant.**

**Bankruptcy No. 3–80–02156. Adv. No. 3–80–0437.**

United States Bankruptcy Court, W. D. Kentucky.

Dec. 14, 1981.

Charles W. Klayer, pro se.

John R. Wilson, trustee, Louisville, Ky.

Thomas T. Mulhall, Louisville, Ky., for Avery.

Charles W. Brooks, Jr., Louisville, Ky., for Bankers Trust.

### MEMORANDUM AND ORDER

STEWART E. BLAND, Bankruptcy Judge.

This bankruptcy case originally came before the Court on complaint of Avery Federal Savings & Loan Association, by counsel, seeking relief from the automatic stay pursuant to 11 U.S.C. § 362, in order to foreclose on real property which is subject to a note and mortgage held by the plaintiff in the amount of Forty-Nine Thousand Seventy-Two and 82/100 Dollars ($49,072.82), with interest at the rate of 8¼% per annum from May 15, 1980. Subsequently, a motion to file an intervening complaint was made by Bankers Trust and Mortgage Company, by counsel, as the holder of a second mortgage on the same property which is the subject of the adversary proceeding of Avery. The motion was sustained by this Court, and Bankers Trust was allowed to

file the intervening complaint based on an indebtedness as of the date of the filing of the petition in bankruptcy of Sixteen Thousand Two Hundred Sixty-Seven and 11/100 Dollars ($16,267.11), with interest at the rate of 1½% per month until paid.

Thereafter, on April 20, 1981, the trustee in bankruptcy filed an Application for Public Sale of Nonexempt Real Estate and an Application to Void Conveyance of Real Estate. The trustee maintains that the real property in issue is part of the debtor's estate, and that the property conveyance to the debtor as trustee for A.S.I. Retirement Trust should be declared void and found to be a conveyance to the debtor individually subject to court approved sale by the trustee with outstanding liens attaching to the proceeds of the sale. The debtor, pro se, has responded by legal memoranda, and the testimony filed of record is the deposition of the debtor.

The testimony is evasive and the pleadings are somewhat confusing. However, essentially the pertinent facts are:

The debtor was a shareholder and incorporator of Actuarial Services, Inc. (A.S.I.) in August of 1964. A.S.I. adopted a retirement plan and trust on May 22, 1967, at a time when the debtor was a director, officer, and employee as well as shareholder in the corporation. The debtor subsequently became the sole (100%) shareholder of A.S.I. in 1970, gaining complete control of the corporation. On September 24, 1970, the debtor signed an amendment to the A.S.I. retirement plan and trust instruments which states:

RESOLVED that in the best interest of the Corporation and the employees of the Corporation the retirement plan executed on the 22nd day of May, 1965, be terminated and Charles W. Klayer be appointed sole trustee of the retirement trust which will continue until the death of the sole participant, Charles W. Klayer, or until he reaches age 65.

NOW, THEREFORE, in accordance with the authorization of the Board of Directors, the A.S.I. retirement plan is hereby terminated and under Provision A–8.2 all benefits are completely vested in the sole participant.

Section A–8.2 of the retirement plan reads as follows:

If the employer terminates this Plan or permanently suspends contributions, all assets of the Trust Fund shall immediately become vested, and the Retirement Committee shall direct the Trustee to compute the value of the Trust Fund held for the benefit of members, retired members, qualified terminated members, disabled members and their beneficiaries otherwise eligible to receive benefits hereunder.

On the same date, September 24, 1970, all contributions to the trust were discontinued by A.S.I., Inc. At some time in 1971 the debtor transferred his stock in A.S.I., Inc., to a trust in the Bahamas which subsequently sold it. On April 15, 1974, the debtor purchased a single family residence located at 5908 Apache Way, Louisville, and signed the mortgage instrument and note in the full amount of $52,000.00, as trustee for A.S.I. Retirement Trust. The debtor has resided at this location continuously since its purchase, paying rent to the trust in such amounts and at such times as he alone has determined. Utilities for the residence have been paid alternately by the debtor individually or as trustee for the A.S.I. trust.

On April 24, 1979, the debtor executed a second mortgage on the real property with Bankers Trust and Mortgage Company in the initial amount of $15,100.00. Again the mortgage is signed by the debtor as trustee for the A.S.I. Retirement Trust. It is the debtor's contention that a loan of the $15,100.00 was then made to the debtor individually by the trust with the trust holding an assignment of the debtor's interest in a certain note. The note subject to the assignment is described in the assignment instrument as:

A promissory note in the amount of $12,500.00, due and payable on June 6, 1980, dated June 6, 1978 and properly authorized by the Board of Coaliquid, Inc. This note bears interest at the rate of 7% and

was signed by W. David Shearer, Jr., then President of Coaliquid, Inc.

It is interesting to note that the assignment is dated April 24, 1979, and April 24, 1978, in various places. A promissory note attached from the debtor to the trust is dated April 24, 1979.

It is the debtor's own testimony that the $15,000.00 amount borrowed from the trust was used by him to pay personal legal fees.

The debtor asserts that the trust for which he serves as trustee is a valid business trust which contains spendthrift provisions and is inalienable by law. The trustee contends that no valid trust is in existence, that the operative provision of the law is KRS 381.180(7), and that the assets of the trust are in reality personal assets of the debtor and are properly assets of the debtor's bankruptcy estate.

In the Code, 11 U.S.C. § 541 defines property of the estate and actions which may be taken with respect thereto. Subsection (a) of § 541 defines "property of the estate", and subsections (b), (c) and (d) create specific exceptions to the general rule of (a). Section (a) provides a broad definition of "property of the estate" as:

> "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1).

The legislative history of § 541 leaves no doubt that the definition was intended to be as broad as the language indicates.

> "The scope of the paragraph is broad. It includes all kinds of property, including tangible and intangible property, causes of action ... and all other forms of property currently specified in Section 70(a) of the Bankruptcy Act. The debtor's interest in property also includes 'title' to property, which is an interest, just as are a possessory interest, or leasehold interest, for example."
>
> H.Rep.No.95–595, 95th Cong., 1st Sess., p. 367 (1977); S.Rep.No.95–989, 95th Cong., 2d Sess., p. 82 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, 6323.

Carved from this all-embracing definition of property of the estate are limited exceptions found in 11 U.S.C. § 541(b) and § 541(c):

> (b) Property of the estate does not include any power that the debtor may *only exercise solely for the benefit of an entity other than the debtor.*
>
> (c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section *notwithstanding* any provision—
>
> (A) *that restricts or conditions transfer of such interest by the debtor;* ...
>
> (2) *A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under the title.* (Emphasis added.)

The rule is elementary that the estate succeeds only to the title and rights in the property that the debtor possessed. Therefore, where the debtor is in the possession of property impressed with a trust which is valid under the terms of the Code, the estate will generally hold such property subject to the outstanding interests of the beneficiaries. Where property is held in trust for the debtor, the estate created under Section 541 succeeds to any interest of the debtor in the trust estate or fund, except as noted in Section 541(c)(2). 4 *Collier on Bankruptcy*, ¶ 541.13 and ¶ 541.14 (15th Ed. 1981).

Thus, property of the estate will include the debtor's beneficial interest in the trust estate unless there is a valid restriction on the transfer of that interest which would be enforceable under nonbankruptcy law.

The debtor asserts that the spendthrift provisions of the trust instrument are valid pursuant to KRS 381.180. However, subsection (7) of KRS 381.180 provides:

> (7) If a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary alienation of his interest, his interest nevertheless shall be subject to alienation by operation of law or legal process.

The Court is unable to find any pertinent Kentucky decisional law interpreting this statutory subsection. Therefore, resort must be made to similar statutory enactments and decisions of another state, in particular the state of Florida, and Federal law.

The Fifth Circuit recently ruled on a similar question in *In Re Witlin*, 640 F.2d 661 (5th Cir. 1981). There it was held that the debtor's interest in a Keogh plan passed to the bankruptcy trustee. A Keogh plan is a particular type of qualified pension plan which contains a spendthrift provision and is recognized in Florida as a spendthrift trust. The Court held that under Florida law, a spendthrift clause in a trust created by a settlor for his own benefit is void. "There is ... a strong public policy that will prevent any person from placing his property in what amounts to a revocable trust for his own benefit which would be exempt from the claims of his creditors." *Id.* at 663.

The Court defined a spendthrift trust as: "...one that is created with the view of providing a fund for the maintenance of another, and at the same securing it against his own improvidence or incapacity for self protection. *Croom v. Ocala Plumbing & Electric Co.*, 62 Fla. 460, 57 So. 243. The typical spendthrift trust is one in which the life cestui's right to recover income is inalienable, either by his own act or that of his creditors, during all or a part of the life of the beneficiary. See Bogert, *Trusts and Trustees*, V.J. Sec. 222, p. 715; Griswold, *Spendthrift Trusts*, Sec. 1, p. 3; *Scott on Trust*, V. 1, Sec. 152, p. 744. *Waterbury v. Munn*, 159 Fla. 754, 32 So.2d 603 at 605.

... [W]e are satisfied that under the common law of trusts, the law is as stated by Professor Bogert in the same work which was cited in *Waterbury*:

If a settlor creates a trust for his own benefits and inserts a spendthrift clause, it is void as far as then existing or future creditors are concerned, and they can reach his interests under the trust."

Bogert, *Trusts and Trustees*, 2d ed. § 223, pp. 438, 439.
*Witlin, supra*, at 663.

Similarly, *Witlin* is followed in *In Re Watson*, 13 B.R. 391, 7 BCD 1381 (Bkrtcy.M.D.Fla.1981). Here, the debtor claimed that Section 541(c)(2) prevented the trustee from reaching his interest in a cooperative investment plan. The plan was a qualified pension, profit-sharing, or bonus plan under the Internal Revenue Code, and contained the required spendthrift clause. In finding that the interest, the right to withdraw funds from the plan at any time, passed to the trustee in bankruptcy, the Court stated that "[t]he cooperative investment plan is very similar to a revocable trust. The debtor's contributions are voluntary, and he may withdraw them at any time." *Id.* at 392, 7 BCD at 1381. The Court found that while a spendthrift clause has certain tax consequences, it does not define the extent of the estate.

In *Matter of Flanzbaum*, 8 B.R. 971 (Bkrtcy.S.D.Fla.1981), the Court dealt with a situation where the debtor purchased real property and placed it in trust for his son. After the creation of the trust, the debtor sold the property, purchased other property with the proceeds, and subsequently repeated these transactions with all deeds recorded in the name of the son with the debtor signing as trustee. Later, the trust property was conveyed to a close personal friend of the debtor as security for his personal debts. The Court found that the actions of the debtor subsequent to the creation of the trust, in pledging the trust assets for his personal debts and through his self-dealing, were such as to be tantamount to a merger of the legal and equitable interests in the trust, thus terminating the trust and vesting title in the trustee, subject to his creditors' claims. *Id.* at 973, citing *U. S. Fidelity and G. Co. v. Salmon*, 81 F.2d 420 (3rd Cir. 1935), 165 A.L.R. 1064.

The Court in *Flanzbaum, supra*, further held that the debtor so disregarded the formalities and purpose of the trust as to cause the trust to fail in its purpose, rendering the trust assets liable in satisfaction of his personal debts.

274

The failure of a trustee to carry out the trust purposes constitutes, under appropriate circumstances, a ground for termination of the trust. 76 Am.Jur.2d, *Trusts*, § 87. *Re: Patterson's Estate*, 333 Pa. 92, 3 A.2d 320, 120 A.L.R. 967 (1939). See, also, *City of Islandia v. Metropolitan Dade County*, 362 So.2d 385 (3rd DCA Fla. 1978) (holding that a trust may be dissolved where its purpose has been so frustrated that it serves no useful purpose). *Smith v. Massachusetts Mutual Life Insurance Co.*, 116 Fla. 390, 156 So. 498 (1934).

*Id.* at 973.

In view of the surrounding circumstances and facts of the instant case, the Court cannot find that a valid trust is in existence. The trustee, the sole beneficiary, and the settlor are one in the same entity—the debtor here. Likewise, the debtor has made such personal use of the trust assets and has engaged in self-dealing to such a degree as to cause a merger of the legal and equitable interests in the trust, and thus the trust should be terminated.

This Court finds that pursuant to KRS 381.180(7) and 11 U.S.C. § 541(c)(2), the trust assets pass to the trustee in bankruptcy and are property of the estate.

This Memorandum and Order constitutes Findings of Fact and Conclusions of Law pursuant to Rule 752, Rules of Bankruptcy Procedure.

WHEREFORE, IT IS ORDERED AND ADJUDGED that the trustee be and is directed to conduct a sale of the nonexempt real property situated at 5908 Apache Road, Louisville, Kentucky 40207, and to hold the proceeds with liens attaching until further orders of this Court.

A copy of this Memorandum and Order is mailed to the debtor pro se, Charles W. Klayer; to John R. Wilson, trustee; to Thomas T. Mulhall, attorney for Avery Federal Savings and Loan; and to Charles W. Brooks, Jr., attorney for Bankers Trust and Mortgage Company.