**In re Roy M. SLEZAK,**

**Helena Slezak, Debtors.**

**Bankruptcy No. 1–85–00181.**

United States Bankruptcy Court,
W.D. Kentucky.

Aug. 6, 1986.

Philip Huddleston, Bowling Green, Ky., for debtor.

Robert R. Saelinger, Louisville, Ky., for trustee.

## MEMORANDUM OPINION

G. WILLIAM BROWN, Bankruptcy Judge.

This matter comes before the Court on debtors claimed exemption in their interest in two ERISA qualified retirement plans. The Trustee has filed his objection to this claimed exemption and both parties have briefed the issue, and the Trustee has tak-en the deposition of the Business Manager of the debtor's former employer.

The debtors filed their Chapter 7 petition on April 3, 1985 listing liabilities of $880,-545.74 and assets of $591,300.00. The debtor's account balances of approximately $392,897.00 in the two plans are not listed as assets of his estate. The debtor, Dr. Roy M. Slezak, has claimed an exemption in the two ERISA qualified retirement plans, a profit sharing plan and a money purchase pension plan. The plans are sponsored by the Graves-Gilbert Clinic, P.S.C., Slezak's former employer.

Slezak began his employment with the Clinic in July, 1962; he left the Clinic in October, 1985. The Clinic was begun in 1937 as a partnership and it was incorporated in 1969. Prior to the end of its year of incorporation, it adopted a profit sharing plan and money purchase pension plan in which Slezak participated throughout his employment with the Clinic. There is a separate plan document for each plan and there was a separate trust agreement for each plan until the 1985 restatement of the trusts where they were combined into one trust document. The original plans and trusts were first restated effective January 1, 1976 as a result of the passage of ERISA. The second restatement of the plans and trusts was effective January 1, 1985 as a result of the Retirement Equity Act of 1984 and other recent changes in the pension laws. The 1985 plans and trust were in effect when Slezak's petition was filed and when he left the Clinic.

The 1985 money purchase pension plan requires the Clinic to make annual contributions equal to a fixed percentage (5.7%) of each employee's compensation above a certain level ($18,000.00 for 1986). The profit sharing plan prior to the 1985 restatement called for contributions of so much of the net profits of the Clinic as the Board of Directors chose to contribute. Contributions were then allocated to individual participant accounts based on compensation. Participants could also make voluntary contributions. The 1985 restatement added to the plan what is commonly

known as a 401(k) feature. This provision allows participants to elect each year to reduce his salary by up to 15% and contribute this reduction amount to the plan. The profit sharing plan also allows participants to withdraw the 401(k) funds in the event of financial or other hardship.

Dr. Slezak participated in the plans from their inception. He served as chairman of the original retirement committee formed in 1969. He was a member of the Board of Directors until he left and apparently served as president of the corporation for a time.

The doctors are free to direct the trustees to invest their accounts in life insurance contracts up to the legal maximum. Dr. Slezak invested a portion of his fund in two life insurance policies which have a combined cash value of approximately $49,-000.00. The trust is the owner of the policies. The total fund attributable to Dr. Slezak at the time he filed bankruptcy is approximately $393,000.00.

Slezak entered into an employment contract with the Clinic on January 1, 1973, which was in effect when he left the Clinic. The contract indicates that the pension contributions were considered part of Dr. Slezak's compensation package, and when he terminated his employment he had the right to withdraw his entire fund. Both plans provide that upon termination of employment, the plan administrators have the discretion of paying benefits in a lump-sum. Of the ten doctors who left the Clinic since 1969, only two (including Dr. Slezak) left their fund with the trust at their own election.

The Clinic's plans and trusts which were restated after Dr. Slezak filed his petition but were effective January 1, 1985, contain a "Spendthrift Clause", which states as follows:

*Spendthrift Clause.* The interests of Participants and Beneficiaries in the Trust Fund or any other trust assets held by the Trustee shall not be subject to assignment or alienation by operation of law or legal process, nor shall such

interests be assignable, alienable or transferable in any way....

The predecessor trust contained a provision with similar language but was headed "Alienation of Benefits".

The first issue for determination by this Court is whether Dr. Slezak's account balances in the Clinic's Profit Sharing and Pension Funds are property of the estate under Section 541(a) of the Code or whether they are excludable under Section 541(c)(2). The debtor argues that the funds are not property of the estate as they are excluded pursuant to Section 541(c)(2). The Trustee argues that this is not a traditional spendthrift trust as defined by state law, and that therefore, Dr. Slezak's interest in these plans should be included in the estate under Section 541(a).

Section 541(a) requires the inclusion in the estate of all property in which the debtor has a legal or equitable interest at the commencement of the case. The legislative history of this section clearly establishes Congressional intent that the estate be as all-encompassing as the language indicates.

The scope of the paragraph is broad. It includes all kinds of property, including tangible and intangible property, causes of action ... and all other forms of property specified in Section 70(a) of the Bankruptcy Act.... [I]t includes as property of the estate all property of the debtor, even that needed for a fresh start. S.Rep. No. 989, 95th Cong., 2nd Sess. 823; H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977).

An exception to this broad definition of the estate is set forth in paragraph (c) of Section 541. Section 541(c)(1) provides generally that restrictions on the transfer of the debtor's interest in property will not prevent inclusion of such a property interest in the estate. Subparagraph (2) states the following exception to this rule:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title. 11 U.S.C. Section 541(c)(2).

The debtor argues that "applicable non-bankruptcy law" includes the qualified ERISA plans in question and that the plan qualifies as a spendthrift trust under state law. The debtor argues that this restriction on transfer of his interest would be enforceable against general creditors under nonbankruptcy law, and is therefore enforceable against the Trustee. *In re Graham*, 726 F.2d 1268, 1270 (8th Cir.1984).

In contrast to the expansive definition given the term "property of the estate" under Section 541, the legislative history of Section 541(c)(2) indicates that the exception provided therein was to be narrowly construed. The House Report stated:

> ... Paragraph (2) of subsection (c), however, preserves restrictions on transfer of a *spendthrift trust* to the extent that the restriction is enforceable under applicable nonbankruptcy law. H.R.Rep. No. 595, 95th Cong., 1st Sess. 175–76 (1977) (emphasis added)

Therefore, it is clear that Congress intended only that the classic spendthrift trust be excluded from the bankrupt's estate. *In re Graham, supra* at 1272; *In re McLean*, 41 B.R. 893, 897 (D.S.C.1984); rev'd 762 F.2d 1204 (4th Cir.1985).

A great majority of the bankruptcy courts which have considered the question of a debtor's pension rights under the Code have concluded that tax-qualified ERISA pension plans created by the debtor's employer are property of the estate. *See In re Klayer*, 20 B.R. 270 (Bankr.W.D.Ky. 1981); *In re Graham, supra* at 1273. This conclusion is buttressed by the finding of courts that self-employed debtors' interests in their tax-qualified Keogh retirement plans are part of the bankruptcy estate. *In re Goff*, 706 F.2d 574 (5th Cir.1983). The Fifth Circuit concluded that Congress intended by its reference to "applicable nonbankruptcy law" to exclude from the estate only those "spendthrift trusts" traditionally beyond the reach of creditors under state trust law. 706 F.2d at 581–82. *See also In re Clark*, 711 F.2d 21 (3rd Cir.1983). Therefore, we find that these funds can only be excluded from the debtor's estate if this plan can be construed as a classic spendthrift trust. *See In re Klayer, supra; Matter of Witlin*, 640 F.2d 661 (5th Cir.1981).

Generally, a spendthrift trust is one in which the right of the beneficiary to future payments of income or principal cannot by the terms of the trust be transferred voluntarily by the beneficiary or reached by the beneficiary's creditors. *See In re Klayer, supra.* Kentucky law recognizes the existence and enforceability of spendthrift trusts as provided in K.R.S. 381.180. Subsection 7 provides:

> (7) If a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary alienation of his interest, his interest nevertheless shall be subject to alienation by operation of law or legal process.

Therefore, to determine excludibility under Section 541(c)(2) based upon whether this plan constitutes a spendthrift trust under Kentucky law, it is necessary to focus on the debtor's control over the plan assets. *See In re Klayer, supra* at 273. There are conflicting arguments asserted by the Trustee and the debtor as to the extent of Dr. Slezak's involvement in the administration of the plans. As stated previously, a true spendthrift trust is one established by a settlor who is independent of the beneficiary of the trust to secure the trust fund against the improvidence of the beneficiary by protecting it against himself, and his creditors and rendering it inalienable by him before payment. *In re McLean, supra* at 897. Under this plan, the doctors are not only the settlors and the beneficiaries, but they also are the trustees of the Clinic's trust. In addition, it is uncontroverted that under the terms of the Plan, Dr. Slezak has the ability to withdraw funds in the event of hardship, and the ability to withdraw the total balance at termination of his employment.

Therefore, in view of the circumstances and facts of the instant case, we find that pursuant to K.R.S. 381.180(7), Dr. Slezak's interest in the Clinic Plans are property of the estate under Section 541(a).

The next issue to be decided is whether Dr. Slezak is entitled to an exemption for the plan funds under Section 522(b) and K.R.S. 427.150. Section 522(b) of the Code permits a debtor to choose between the federal scheme of exemption under Section 522(d), or the exemptions specified under the law of the debtor's state of domicile. If the state exemptions are elected, Section 522(b)(2)(A) permits the debtor to also utilize exemptions provided by "federal law other than Section 522(d)". Kentucky law eliminates the option of using the federal exemption of Section 522(d). K.R.S. 427.-170 provides that "An individual domiciled in this state is not authorized to exempt from property of said debtor's estate the property specified under subsection (d) of Section 522 of the Bankruptcy Code of 1978...." K.R.S. 427.150 further provides that an individual is entitled to exempt assets held, payments made, and amounts payable under a stock bonus, pension, profit-sharing, annuity or similar plan or contract "to the extent reasonably necessary for the support of him and his dependents."

First, it is necessary to determine whether ERISA is such "federal law other than Section 522(d)" under Section 522(b)(2)(A) permitting an exemption in addition to the state law exemptions. We are persuaded by the rationale of the Eighth Circuit in *In re Graham*, 726 F.2d 1268, 1274 (8th Cir.1984) and the Fifth Circuit in *Matter of Goff*, 706 F.2d 574, 582–83 (5th Cir.1983), that ERISA does not provide a basis for an additional exemption under Section 522(b)(2)(A). Further, it appears that the majority of the courts which have ruled on this issue have reached the same conclusion. *See also, In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *Matter of Crenshaw*, 44 B.R. 30 (Bankr.N.D.Ala.1984).

Since we are limited to the exemptions as provided for under Kentucky law, we next address the issue of the "reasonably necessary" standard provided in K.R.S. 427.150 to determine how much of debtors' pension funds are exempt. The only reported Kentucky bankruptcy case on the reasonable needs standard is *In re*

*Worthington*, 28 B.R. 736 (Bankr.W.D.Ky. 1983). This Court held a debtor's IRA to be exempt because of its modest amount (approximately $6,000.00); the test of reasonable necessity was deemed met. *Worthington, supra* at 738.

Looking to other jurisdictions, we find that to determine if the reasonably necessary test has been met, the court must examine all of the facts and circumstances including the debtor's age, earning capacity, present and future financial needs, ability to insure against future disruptions in earning capacity, and his ability to reestablish a retirement fund. *See In re Kochell*, 732 F.2d 564, (7th Cir.1984). Other courts have stated that the exempt amounts "ought to be sufficient to sustain basic needs, not related to his former status in society or the lifestyle to which he is accustomed but taking into account the special needs that a retired and elderly debtor may claim". *In re Miller*, 33 B.R. 549, 553 (Bankr.D.Minn.1983) (quoting *In re Taff*, 10 B.R. 101, 107 (Bankr.D.Conn.1981).

After examining the proof in this case, the Court finds that it does not have sufficient evidence, among other things, of the number of the debtors' dependents and Dr. Slezak and his family's current and future income and expenses. Therefore, the Court will set this matter for a hearing to allow Dr. Slezak to submit additional proof on the issue of what is reasonably necessary for the support of himself and his dependents.

The above constitutes Findings of Fact and Conclusions of Law pursuant to Rules of Bankruptcy Procedure 7052. A separate Order will be entered this date.