McMILLIAN, Circuit Judge.
 

 Charles W. Graham is the debtor in this Chapter 7 bankruptcy case. Graham was also the trustee of an ERISA profit sharing plan in which he has an interest. Graham now appeals from a final order of the Bankruptcy Court for the Northern District of Iowa
 
 [1]
 
 ordering him to turn over plan trust funds for inclusion in the bankruptcy estate and denying his claimed exemption. For reversal appellant argues that the anti-alienation provision in the trust instrument, required by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1056(d)(1) (1976), excludes the trust funds from the bankruptcy estate under the new Bankruptcy Code, 11 U.S.C. § 541(c)(2) (Supp. V 1981), or alternatively, that ERISA creates an exemption for the trust funds under § 522(b)(2)(A) of the Bankruptcy Code. For the reasons discussed below, we conclude that the debtor’s interest in the trust funds is property of the bankruptcy estate and that an exemption may not be claimed under 11 U.S.C. § 522(b)(2)(A). Accordingly, we affirm the order of the bankruptcy court.
 

 The debtor, Charles W. Graham, filed a voluntary Chapter 7 petition in bankruptcy on April 24, 1981. Graham was the sole stockholder, director and officer of Charles W. Graham, M.D., Ltd., a professional corporation that derived its earnings from Graham’s services as a physician. In September 1970, the corporation established a profit sharing retirement plan for its employees. The plan was amended in November 1976 to meet the requirements of ERISA and to qualify for tax purposes under the Internal Revenue Code, 26 U.S.C. § 401(a). The corporation had only two employees during its existence, Graham and Wayne Ryan, both of whom were participants in the ERISA plan.
 

 Employer contributions to the trust were made for each taxable year from the corporation’s net profits in the amount deemed advisable by the board of directors. Each participant was allocated that percentage of the corporation’s contribution which his salary represented of the total salaries paid for that year. In addition, each participant could make voluntary contributions to the trust for his own benefit. On the
 
 [1]
 
 date the bankruptcy petition was filed, Graham’s fully vested accrued benefits under the plan were $150,000.00, attributable to corporation contributions on his behalf.
 

 The written plan agreement provided that a participant’s nonforfeitable accrued benefits would be distributed by one or more of three methods, as life annuity income, as fixed period installments, or as a lump sum payment, and that distribution would begin not later than the 60th day after the close of the plan year in which the participant reaches age 65, or terminates services with the employer. If a participant terminated employment prior to attaining age 65, it was within the sole discretion of the “Advisory Committee” whether to commence distribution of the participant’s benefits after the close of that plan year, or whether to continue to hold the benefits until after the close of the Plan Year in which the participant turns 65.
 
 *1270
 
 The Advisory Committee consisted of the corporation’s board of directors. Thus, as the sole director, Graham was also the sole member of the Advisory Committee.
 

 The plan agreement also contained the following antialienation clause: “The participant ... shall not assign or alienate any benefit provided under the Plan, and the Trustee shall not recognize any such assignment or alienation.” The trustee was empowered to make a loan to a participant provided the loan was secured by the non-forfeitable portion of the participant’s accrued benefit.
 

 Ryan terminated employment with the corporation after approximately four years of service. The Advisory Committee decided not to distribute his benefits at that time, but to continue to hold them in trust until Ryan reached 65. The record does not indicate the amount of Ryan’s accrued benefits.
 

 On April 21, 1981, three days before Graham filed for bankruptcy, the discretionary distribution provision of the ERISA plan was amended at a special meeting of the board of directors to provide that benefits under the plan were not payable to a participant except upon total disability or attainment of the age of 65. On April 24, 1981, the date of the petition in bankruptcy, Graham terminated his employment with the corporation, and on June 21, 1981, he resigned from the positions of officer and director. On July 10, 1981, the bankruptcy trustee was elected sole director of the corporation and, in that capacity, rescinded the April 21 amendment to the distribution provision, retroactive to April 24, 1981.
 

 The bankruptcy trustee then filed a complaint against Graham, as trustee of the corporation’s ERISA plan, requesting the bankruptcy court to order the turnover of the debtor’s accrued benefits under the plan for inclusion in the bankruptcy estate. On October 18, 1982, the bankruptcy court issued its order, with findings of fact and conclusions of law, holding that Graham’s interest in the funds was nonexempt property of the estate and ordering its turnover.
 
 In re Graham,
 
 24 B.R. 305 (Bkrtcy.N.D. Iowa 1982).
 

 Graham’s first point on appeal is that his interest in the pension plan created by his employer was excluded from his bankruptcy estate under § 541(c)(2) of the Bankruptcy Code as a property interest subject to a restriction on alienation “enforceable under applicable nonbankruptcy law.” 11 U.S.C. § 541(c)(2).
 

 The filing of a Chapter 7 bankruptcy petition creates an estate comprised of “all legal and equitable interests of the debtor in property as of the commencement of the case.”
 
 Id.
 
 § 541(a)(1). The legislative history of this section clearly establishes Congressional intent that the bankruptcy estate be as all-encompassing as the language indicates.
 

 The scope of the paragraph is broad. It includes all kinds of property, including tangible and intangible property, causes of action .. . and all other forms of property specified in Section 70(a) of the Bankruptcy Act... . [I]t includes as property of the estate all property of the debtor, even that needed for a fresh start.
 

 S.Rep. No. 989, 95th Cong., 2d Sess. 823,
 
 reprinted in
 
 1978 U.S.Code Cong.
 
 &
 
 Ad. News 5787, 5868; H.R.Rep. No. 595, 95th Cong., 1st Sess. 367-68 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 6322-24.
 

 An exception to this broad definition of the estate is set forth in paragraph (c) of § 541. Section 541(c)(1) provides generally that restrictions on the transfer of the debt- or’s interest in property will not prevent inclusion of such a property interest in the estate. Subparagraph (2) states the following exception to this rule: “A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.” 11 U.S.C. § 541(c)(2).
 

 Graham argues that “applicable nonban-kruptcy law” includes ERISA which has been construed as precluding garnishment of benefits under a qualified plan by a general creditor of a plan beneficiary.
 
 See General Motors Corp. v. Buha,
 
 623 F.2d 455 (6th Cir.1980)
 
 (Buha); Commercial Mort
 
 
 *1271
 

 gage Insurance, Inc. v. Citizens National Bank,
 
 526 F.Supp. 510 (N.D.Tex.1981)
 
 (Commercial
 
 Mortgage). Thus, Graham argues, the anti-alienation clause in the plan, required by ERISA, 29 U.S.C. § 1056(d)(1), is a restriction on the transfer of his interest in the trust funds which would be enforceable against general creditors under nonbankruptcy law, and is therefore enforceable against the bankruptcy trustee.
 

 The change in the scope of property of the estate effectuated by the new Bankruptcy Code, the legislative history of § 541(c)(2), the exemption provisions of the Code and .the preemption provision of . ERI-SA all convince us that Congress did not intend “applicable .nonbankruptcy law” to include ERISA. Rather, Congress only intended by,§ 541(c)(2) .to preserve, the status traditional spendthrift trusts, as recognized by state law, enjoyed under the old Bankruptcy Ac). - : . . . .
 

 In general terms, a spendthrift trust is one in which the right of the beneficiary to future payments of income or capital cannot be voluntarily transferred by the beneficiary dr reached by his or her creditors. There is a conflict of authority among the states on the question of the validity of stích trusts and on the extent to which a beneficiary's right to future- income and principal can be protected. See 2 A. Scott, The Law of Trusts § 151 (3d ed. 1967); G. Bogert, Handbook of the Law of Trusts §. 40 (5th ed. 1973).
 

 Under the- old Bankruptcy Act, property of the estate was defined in terms of its transferability or ■ leviability. Section 70(a)(5) of the old Act provided that the trustee of the estate was vested by operation of law with the title of the bankrupt in “property ... which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered.” 11 U.S.C. § 110(a)(5) (repealed 1978). Exempt property constituted one class of property which expressly did not pass to the trustee.
 

 Under this transferability-leviability standard, a bankrupt’s beneficiabinterest in a trust was not part of the estate if the interest could not be transferred or levied upon under state law.
 
 See Eaton v. Boston Safe Deposit & Trust Co.,
 
 240 U.S. 427, 429, 36 S.Ct. 391, 392, 60 L.Ed. 723 (1916);
 
 In re McLoughlin,
 
 507 F.2d 177, 181 (5th Cir. 1977);
 
 In re Ahlswede,
 
 516 F.2d 784, 786 (9th Cir.),
 
 cert. denied,
 
 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975). Thus to the extent a state recognized the validity of a spendthrift trust provision, the trustee in bankruptcy had ho rights to the trust funds.
 
 First Northwestern Trust Co. v. Internal Revenue Service,
 
 622 F.2d 387 (8th Cir. 1980).
 

 The new Bankruptcy Code reflects a change in the concept of property of the estate. Unlike the Act, the Code does not exclude exempt property from the estate. All property of the debtor, even property needed' for a fresh start, is included in the estate. After the'property'comes into the estate, the debtor is then permitted to exempt property -needed for a fresh start. The Code thus incorporates • within its scheme the twofold purpose of bankruptcy law, that of converting the estate into cash for distribution among creditors and of providing the debtor with a fresh start.
 
 See
 
 4 L. King, Collier on Bankruptcy § 541.02(1) (15th ed. 1983).
 

 The Code abandoned the transferability-leviability standard and provided instead that “all legal and equitable interests of the debtor in property” become property of the estate. Under this all-inclusive definition, a beneficial interest in a spendthrift trust would be property of the estate. The legislative history of § 541(c)(2), however, establishes that Congress intended by that section to preserve, the status traditional spendthrift trusts had under the old Act. The- House Report accompanying their bill, H.R. 8200, explained as follows:
 

 The bill makes significant changes, in what constitutes property of the estate .... The bill determines what is property of the estate by a simple reference to what interests in property the debtor has at the commencement of the case. This includes all interests ... whether or not transferable by the debtor .... The bill
 
 *1272
 
 ... continues over [from the Act] the exclusion from property of the, estate of the debtor’s interest in a spendthrift trust to the extent the trust is protected from creditors under applicable State law. The bankruptcy of the beneficiary should not be permitted to defeat the legitimate expectations of the settlor of the trust.
 

 H.R.Rep. No. 595, 95th Cong., 1st Sess. 175-76 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 6136. In its section-by-section analysis the House Report stated: “Paragraph (2) of subsection (c) [of § 541]
 
 preserves
 
 restrictions on transfer of a
 
 spendthrift trust
 
 to the extent the restriction is enforceable under applicable nonbankruptcy law.”
 
 Id.
 
 at 369,1978 U.S.Code Cong. & Ad.News at 5963, 6325 (emphasis added).
 

 The Senate Report, accompanying S. 2266, similarly explained that § 541(c)(2) was intended to preserve restrictions on a transfer of spendthrift trusts to the extent such trusts were valid under state law. S.Rep. No. 989, 95th Cong., 2d Sess. 83,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News 5787, 5869.
 

 There is no indication whatever that Congress intended § 541(c)(2) to be a broad exclusion which would apply to keep all debtors’ entire ERISA plan benefits out of the estate. To the contrary, pension benefits are specifically treated under the Code’s
 
 exemption
 
 provision, clearly indicating that they were intended and assumed to be part of the estate. Section 522(d), which sets forth the “federal” set of exemptions, provides an exemption for
 

 (10) The debtor’s right to receive—
 

 [[Image here]]
 

 (E) a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—
 

 (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor’s rights under such plan or contract arose;
 

 (ii) such payment is on account of age or length of service; and
 

 (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408, or 409).
 

 It was with private plans particularly in mind that the Commission on the Bankruptcy Laws proposed the reasonable support limitation, because of the well-known' fact that a corporate officer or a member of a professional corporation may be entitled to vested pension benefits aggregating hundreds of thousands of dollars. Plumb,
 
 The Recommendations of the Commission on the Bankruptcy Laws
 
 — Exempt
 
 and Immune Property,
 
 61 Va.L.Rev. 1, 59 (1975) (citing Commission’s note 8 to Proposed Bankruptcy Act § 4 — 503;. S.Rep. No. 552, 91st Cong., 1st Sess. 201, 271 (1969)). While the § 522(d)(10)(E) exemption would apply to non-ERISA plans as well as to qualified ERISA pians, the latter are certainly included within its terms.
 

 The state exemption systems of states which have “opted out” of .the federal exemptions under § 522(b),
 
 [2]
 
 as well as states which have not, also provide exemptions for benefits from various public and private employee pension plans.
 
 See
 
 7 L. King, Collier on Bankruptcy.
 

 We thus see a coherent scheme regarding a debtor’s pension rights under the Code consistent with the Code’s general policy. The question of pension rights is dealt with as a matter of exemption. A debtor’s
 
 *1273
 
 interest in pension funds first comes into the bankruptcy estate. To the extent they are needed for a fresh start they may then be exempted out.
 

 ERISA specifically provides that its provisions were not to affect the operation of other federal statutes: “Nothing in this subchapter [including 29 U.S.C. § 1056(dXl)] shall be construed to modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any law.” 29 U.S.C. § 1144(d). Thus, while ERISA-required anti-alienation clauses may preempt state law and preclude the use of judgment enforcement devices provided thereunder, they do not preclude inclusion of pension benefits in a debtor’s bankruptcy estate by operation of federal law.
 

 A great majority of the bankruptcy courts which have considered the question of a debtor’s pension rights under the new Code have concluded that tax-qualified ER-ISA pension plans created by the debtor’s employer are property of the bankruptcy estate. Several opinions have directly addressed the issue and so held.
 
 See In re Klayer, 2D
 
 B.R. 270 (Bkrtcy.W.D.Ky.1981);
 
 In re Watson,
 
 13 B.R. 391 (Bkrtcy.M.D.Fla. 1982);
 
 In re Threewitt,
 
 20 B.R. 434 (Bkrtcy. D.Kan.1982),
 
 rev’d,
 
 24 B.R. 927 (D.Kan. 1982). Other bankruptcy court opinions simply accept the proposition that these ERISA plans are included in the bankruptcy estate and focus on whether they may be exempt under either federal or state exemptions.
 
 See In re Hinshaw,
 
 23 B.R. 233 (Bkrtcy.D.Kan.1982);
 
 In re Everhart,
 
 11 B.R. 770 (Bkrtcy.N.D.Ohio 1981);
 
 In re Donaghy,
 
 11 B.R. 677 (Bkrtcy.S.D.N.Y.1981);
 
 In re Kochell,
 
 26 B.R. 86 (Bkrtcy.W.D.Wis. 1982),
 
 aff’d,
 
 31 B.R. 139 (W.D.Wis.1983).
 
 But see In re Threewitt,
 
 24 B.R. 927 (D.Kan.1982);
 
 In re Pruitt,
 
 30 B.R. 330 (Bkrtcy.D.Colo.1983).
 

 Two cases which arose under and were governed by the old Bankruptcy Act explained that the soon to be effective Code classified the debtor’s right to receive ERISA benefits as exempt rather than excluded property.
 
 In re Turpin,
 
 644 F.2d 472,474 n. 1 (5th Cir.1981);
 
 In re Bavielio, 12
 
 B.R. 412, 417 n. 6 (Bkrtcy.E.D.N.Y.1981).
 

 The Fifth Circuit has recently addressed the analogous question of whether self-employed debtors’ interests in their tax-qualified Keogh retirement plans are part of the bankruptcy estate.
 
 In re Goff,
 
 706 F.2d 574 (5th Cir.1983). After an examination of the legislative history of § 541(c)(2), the court concluded that Congress intended by its reference to “applicable nonbankruptcy law” to exclude from the estate only those “spendthrift trusts” traditionally beyond the reach of creditors under state trust law. 706 F.2d at 581-82. The retirement plans in
 
 Goff
 
 contained the anti-alienation clause required by the Internal Revenue Code, 26 U.S.C. § 401(a), to qualify for tax benefits. Nevertheless the court held that they were not excluded from the estate under § 541(c)(2) of the Bankruptcy Code. 706 F.2d at 588.
 
 See also In re Clark,
 
 711 F.2d 21 (3d Cir.1983) (Keogh plan assumed to be part of bankruptcy estate);
 
 but see id.
 
 at 24 (Becker, J., concurring) (pension plan created by employer would not be included in employee’s bankruptcy estate).
 

 The next issue to be decided is whether Graham is entitled to an exemption for the qualified ERISA pension plan funds under § 522(b)(2)(A) of the Bankruptcy Code. That section permits a debtor utilizing a state exemption system to also exempt “any property that is exempt under Federal law, other than subsection (d) of this section.”
 

 Graham argues that the plan’s prohibition on assignment and alienation required by ERISA, 29 U.S.C. § 1056(d), and by the Internal Revenue Code in order to qualify the plan for tax purposes, 26 U.S.C. § 401(a), make his interest in the plan “property that is exempt under Federal law.” As noted above, these two statutory provisions have been construed by federal courts as creating a bar to garnishment of qualified plan benefits by general commercial creditors of a beneficiary.
 
 Buha,
 
 623 F.2d 455;
 
 Commercial Mortgage,
 
 526 F.Supp. 510. The question before us is whether this bar constitutes a § 522(b)(2)(A) federal exemption in a bankruptcy proceeding.
 

 The House and Senate Reports on the “Federal law other than subsection (d)” pro
 
 *1274
 
 vision provide the following illustrative list of property which might be exempted under Federal laws:
 

 Foreign Service Retirement and Disability payments, 22 U.S.C. 1104;
 

 Social security payments, 42 U.S.C. 407;
 

 Injury or death compensation payments from war risk hazards, 42 U.S.C. 1717; Wages of fishermen, seamen, and apprentices, 46 U.S.C. 601;
 

 Civil service retirement benefits, 5 U.S.C. 729, 2265;
 

 Longshoremen’s and Harbor Workers’ Compensation Act death and disability benefits, 33 U.S.C. 916;
 

 Railroad Retirement Act annuities and pensions, 45 U.S.C. 228(L);
 

 Veterans benefits, 45 U.S.C. 352(E);
 

 Special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. 3101; and
 

 Federal homestead lands on debts contracted before issuance of the patent, 43 U.S.C. 175.
 

 S.Rep. No. 989, 95th Cong., 2d Sess. 75,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News 5787, 5861; H.Rep. No. 595, 95th Cong., 2d Sess. 360 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6316. The legislative history provides no further indication of the intended scope of this provision.
 

 While the above list was not meant to be exclusive, we find the failure of Congress to include ERISA plan benefits probative of Congressional intent that ERISA was not a “Federal law” upon which a § 522(b)(2)(A) exemption could be based.
 
 See In re Goff,
 
 706 F.2d at 585. Furthermore, although the provisions of some of the statutes on the list creating a federal exemption are similar to the anti-alienation provision of ERISA, there is a conceptual distinction between the property exempted by the listed laws and the property covered by ERISA. The pensions, wages, benefits and payments included in the illustrative list are all peculiarly federal in nature, created by federal law or related to industries traditionally protected by the federal government. In sharp contrast, ERISA regulates private employer pension systems. We thus conclude, as did the Fifth Circuit,
 
 id.
 
 at 586, that Congress did not intend to include ERISA plans within the other “Federal law” exemption of § 522.
 
 Contra In re Hinshaw,
 
 23 B.R. 233.
 

 Accordingly, the order of the bankruptcy court is affirmed.
 

 [1]
 

 . The Honorable William W. Thinnes, Judge, United States Bankruptcy Court for the Northern District of Iowa.
 

 [2]
 

 . Section 522(b) provides in pertinent part:
 

 (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—
 

 (1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph 2(A) of this subsection specifically does not so authorize; or, in the alternative, (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the 'filing of the petition, or for a longer portion of such 180-day period than in any other place.