In the Matter of Gilbert CRENSHAW Jacqueline Crenshaw, Debtors.

Bob J. RODGERS, as Trustee of the Estate of Gilbert Crenshaw and Jacqueline Crenshaw, Plaintiff,

v.

Charles NORMAN, Lewis C. Gudyka, Richard Norman, as Trustee of the Automatic Screw Machine Products Co. Employees Retirement Trust, and Gilbert and Jacqueline Crenshaw, Defendants.

Bankruptcy No. 83–1888.
Adv. No. 83–0627.

United States Bankruptcy Court,
N.D. Alabama, N.D.

Sept. 11, 1984.
Order Oct. 9, 1984.

Philip A. Geddes, Decatur, Ala., for trustee. Jack Caddell, Decatur, Ala., for debtors.

Philip Shanks, Jr., Caddell, Shanks, Harris, Moores & Murphree, Decatur, Ala. and Dow M. Perry, Jr., Harris, Shinn, Phillips & Perry, Decatur, Ala. for Trustee of the Automatic Screw Machine Products Co. Employees Retirement Trust.

## MEMORANDUM OPINION

EDWIN D. BRELAND, Bankruptcy Judge.

This matter is before the Court on the complaint of the trustee, Bob J. Rodgers, for the turnover of certain funds from Automatic Screw Machine Products Company Employees Retirement Trust (hereinafter referred to as "the Plan"). Said complaint was amended soon after the original filing to name Charles Norman, Lewis C. Gudyka and Richard Norman as Trustee of the Automatic Screw Machine Products Company Employees Retirement Trust (hereinafter collectively referred to as "the non-debtor defendants"), and the debtors as real defendants in interest. Subsequently, the trustee, the debtor and the non-debtor defendants filed separate motions for summary judgment. All three motions were heard on the date set for pre-trial conference, the 5th day of October, 1983.

From the pleadings, oral and written arguments presented by counsel for the respective parties, affidavits and other evidence presented, the Court does hereby make the following findings of fact and conclusions of law. Gilbert Crenshaw (hereinafter referred to as "Crenshaw") has been employed by Automatic Screw Machine Products Company (hereinafter referred to as "Automatic") since September, 1965. Crenshaw has a vested interest as an employee in the Plan which was established by Automatic as a pension plan for its employees. All contributions made to Crenshaw's account have been made by Automatic or have been derived from earnings on said account. The Plan is a qualified plan under the Employees Retirement Income Security Act of 1974 (hereinafter referred to as "ERISA"), and as such, enjoys favorable tax treatment accordingly. As an ERISA-qualified profit-sharing plan, the Plan provides that the interest of a participating employee is generally inalienable and unleviable. Crenshaw's account had a vested balance of $9,180.20 at the time of the filing of the petition. As required under ERISA, the Plan provides that the participating employee gains the absolute right to withdraw the vested balance only upon the death, disability, or retirement of the employee. An examination of the trust instrument itself reveals the painstaking detail required to meet the requirements of 26 U.S.C. Section 401, which is necessary to qualify a pension plan under ERISA. The foregoing facts are generally undisputed, and the lack of any material question regarding said facts indicates that this matter is presented to the Court as a question of law and thus is due to be resolved by summary judgment.

The basis for the trustee's complaint for turnover of Crenshaw's vested interest in the Plan is 11 U.S.C. Section 541(a)(1), which states:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

The exception mentioned in Section 541(a)(1) includes, as the non-debtor defendants point out, so-called "spendthrift" trusts. Specifically, Section 541(c)(2) provides that:

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

The debtors and the non-debtor defendants argue that an ERISA-qualified pension plan such as the plan in question is by its

very nature one that is "enforceable under applicable nonbankruptcy law", and thus, clearly within the Section 541(c)(2) exception. Although the Legislative History suggests that the exception is limited to spendthrift trusts, the defendants contend that the anti-alienation requirements of 26 U.S.C. Section 401(a)(13) and 29 U.S.C. Section 1056(d)(1) restrict transferability to an extent so as to put Crenshaw's vested interest in the Plan out of the reach of the trustee. The debtors and the non-debtor defendants make an alternative argument that even if the debtors' interest in the Plan is found by the Court not to be within the Section 541(c)(2) exclusion, then the ERISA-qualifying federal statutes mentioned above entitle the debtors to an exemption of said vested interest under 11 U.S.C. Section 522(b)(2)(A).

The initial question presented to the Court by virtue of the foregoing facts and arguments of counsel is one that has been arising with increasing frequency since the enactment of the Bankruptcy Code, and until recently there has been little consistency in the judicial resolution of issues surrounding the effect of 11 U.S.C. Section 541(a)(1) on the various types of employment-related pension and profit-sharing plans.

■ The predecessor to Section 541(a)(1) of the Code was Section 70(a) of the old Bankruptcy Act. Under Section 70(a) of the Act, the extent to which the trustee was vested with the title to the property of the estate was not as broad as under Section 541(a)(1) of the Code. Under the old Act, the question of whether an interest of the debtor became property of the estate centered on the leviability or transferability of such an interest. *In re Edgar,* 728 F.2d 1371 (11th Cir.1984); *In re Graham,* 726 F.2d 1268, 1271, 1272 (8th Cir.1984); *Matter of Turpin,* 644 F.2d 472, 474 (5th Cir. 1981); *In re McLoughlin,* 507 F.2d 177, 181 (5th Cir.1975). The opinion of the Eighth Circuit Court of Appeals in *Graham* contains a thorough analysis of the transferability/leviability standard under the old Act and the abandonment of such a stan-

dard under the new Code. The *Graham* decision also discusses the distinction between ERISA-qualified pension plans and traditional spendthrift trusts, noting that the tax-oriented statutory qualifications of an ERISA plan cannot be construed as "applicable non-bankruptcy law" that could be enforced to exclude such an interest from the debtor's estate under Section 541(c)(2) of the Code. *Graham* at 1271, 1272.

Some bankruptcy courts have held that ERISA-qualified plans are within the exception provided by Section 541(c)(2) of the Code, and are therefore not property of the estate. *In re Holt,* 32 B.R. 767, 769, 770, 771, 772 (Bkrtcy.E.D.Tenn.1983); *In re Pruitt,* 30 B.R. 330, 331, 332 (Bkrtcy.Colo. 1983). These cases are generally based on the broad interpretation of the reference in the Legislative History of Section 541(c)(2) to a "spendthrift trust" as being merely illustrative, or the finding that the language of Section 541(c)(2) was sufficiently clear so as to make it unnecessary to refer to the Legislative History.

However, a substantial number of bankruptcy courts have held that the debtor's interest in pension plans and profit-sharing plans, ERISA-qualified or otherwise, is property of the estate, and is not excluded as spendthrift-type trusts under Section 541(c)(2) of the Code. *In re Miller,* 33 B.R. 549, 550 (Bkrtcy.Minn.1983); *Matter of Kelley,* 31 B.R. 786, 787, 788 (Bkrtcy.N.D. Ohio 1983); *In re DiPiazza,* 29 B.R. 916, 918–923 (Bkrtcy.N.D.Ill.1983); *In re Threewitt,* 20 B.R. 434, 437–440 (Bkrtcy. Kan.1982).

The split among the bankruptcy courts concerning the application of Section 541(a)(1) and Section 541(c)(2) to the debtor's interest in pension and profit-sharing plans amplified the significance of recent decisions of the various Circuit Courts of Appeals regarding this issue. The appellate courts have clearly resolved the question in favor of a broad application of Section 541(a)(1) and a restrictive interpretation of Section 541(c)(2). See *Graham,* supra; *Matter of Johnson,* 724 F.2d 1138 (5th

Cir.1984); *Matter of Goff,* 706 F.2d 574 (5th Cir.1983).

In *Goff,* the court emphasized the intent of Congress in passing the Bankruptcy Code to better reconcile the often-conflicting policies behind the old Act—that is, ... to secure everything of value the bankrupt might possess in alienable or leviable form, but to permit a bankrupt to accummulate new wealth after the date of his petition and to allow him an unencumbered fresh start. *Goff* at 578. The Code offered a streamlined and more practical method of balancing these competing interests. According to the *Goff* court, the concept of "property of the estate" under Section 541(a)(1) of the Code is purposefully all-inclusive in order to alleviate the cumbersome process of identifying "excluded" property. Under the Code, literally all property to which the debtor has any interest as of the filing of the bankruptcy petition automatically becomes property of the estate, regardless of whether such interest is legal or equitable. *Goff* at 578. The *Goff* court went on to hold that the exception provided by Section 541(c)(2) of the Code was not intended to apply to ERISA-qualified trusts, and that Congress specifically intended that only traditional spendthrift trusts, enforceable under state law, were to be so excluded. *Goff* at 580, 582. Another recent Fifth Circuit decision, *Johnson,* supra, reiterated the holding in *Goff* that ERISA-qualification does not necessarily characterize a trust as a traditional spendthrift trust that would be excluded from the debtor's estate under Section 541(c)(2) of the Code. *Johnson* at 1140, 1141.

The decision of the Eighth Circuit in *Graham,* supra, supported by a comprehensive analysis of the policies and legal issues involved, appears to give a clear directive to courts faced with Section 541/ERISA questions. The *Graham* court held that Section 541(c)(2) applied only to spendthrift trusts as recognized and enforceable under state law, and that Congress clearly did not intent to prevent the bankruptcy trustee from reaching funds of the debtor merely because such funds were held in a trust that qualified for favorable tax-treatment. The provisions of ERISA contain specific language that indicates that although its stringent anti-alienation requirements may preclude an attempt to reach the debtor's interest under state law, nothing in ERISA can interfere or supersede the operation of federal law. Thus, the holding in *Graham,* as well as the foregoing Fifth Circuit decisions, mandates that the debtor's interest in an ERISA-qualified pension plan such as the Plan before the Court is to be included in the debtor's estate.

Having found that the debtors' interest in the Plan is included as property of the estate under Section 541(c)(2) of the Bankruptcy Code, the Court must resolve the issue raised by the argument made in the alternative by the debtors and the non-debtor defendants. Said contention is that said property, although included in the debtors' estate, is exempt by virtue of 11 U.S.C. Section 522(b)(2)(A), which states:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—

\*       \*       \*       \*       \*       \*

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition...

The statutes that contain the federal law upon which the defendants rely on as providing an exemption with regard to the subject funds are the same statutes that govern the requirements of the ERISA-qualified trust. The *Graham* court unequivocally ruled that ERISA, although a federal law, does not provide a basis for an exemption under Section 522(b)(2)(A). *Graham* at 1273, 1274; See also *Goff* at 585. Furthermore, the Legislative History behind Section 522(b) specifically lists the types of federal exemptions referred to in Section 522(b)(2)(A), and although the list is not intended to be exhaustive, ERISA is conspicuously missing from the list. The Court follows the rationale and holding of

the *Graham* and *Goff* cases in finding that neither ERISA nor any other federal statute creates an exemption for the funds held in an ERISA-qualified trust.

It is the further opinion of this Court that the only state law exemption available to the debtors concerning the funds in the plan is the personal property exemption provided in Section 6–10–6 of the Code of Alabama (1975). See also 7 Collier in Bankruptcy 6–18.4 (15th ed. 1984). The section of the Code of Alabama (1975) upon which the defendants further base their argument for an exemption, Section 6–9–40(2), is inapplicable, since the trustee's request for the turnover of the funds is not an attempt to enforce a judgment nor is it any type of garnishment proceeding. See *DiPiazza,* supra, at 919. Therefore, a determination of whether the debtors' vested interest in the plan is a "chose in action" within the meaning of said state statute is unnecessary.

Upon consideration of the foregoing findings of fact and conclusions of law, the Court concludes that the motion of the trustee for summary judgment on the complaint for turnover of the subject funds is due to be granted.

An appropriate Order in accordance with this opinion will be entered.

### ORDER

This matter is before the Court on the motion of the debtors to alter, amend or vacate judgment previously entered by the Court on September 11, 1984. Hearing in this cause was held on the 26th day of September, 1984.

The debtors' motion is based on the contention that the case of *St. Paul Fire and Marine Ins. Co. v. Cox,* 583 F.Supp 1221 (N.D.Ala.1984) is applicable to the facts in this case and holds contrary to the judgment entered by this Court. The debtors argue that the *St. Paul* decision would appear to allow garnishment of a pension plan only if fraud or some other conduct creating a nondischargeable debt could be proven. However, upon analysis and consideration of the District Court's opinion in

*St. Paul,* the Court finds little relevance to the case at bar. Initially, the Court reiterates the distinction between a garnishment or judgment enforcement and the trustee's request for turnover as discussed in *In re Piazza,* 29 B.R. 916, 919 (Bkrtcy.N.D.Ill. 1983). Furthermore, the holding in *St. Paul* actually bolsters this Court's finding that the non-alienability feature of a pension plan as required to qualify such a plan under ERISA does not necessarily insulate such a plan from invasion of a creditor, or in this case, a trustee in bankruptcy. Thus, the Court is of the opinion that the judgment previously entered by this Court is correct and in accordance with prevailing law.

At the hearing, representatives of all parties informed the Court that an agreement had been reached concerning the amount of Mr. Crenshaw's interest in the subject profit-sharing plan which could be included in his personal property exemption pursuant to Section 6–10–6, Code of Alabama (1975). Apparently, the employer, Automatic Screw Machine Products Company, and the trustee of the retirement trust have agreed to allow Mr. Crenshaw to maintain his account in an amount equal to the portion of the subject funds that are determined to be within his allowable exemption. The amount agreed upon by the bankruptcy trustee and the debtors is $1,800.00. Therefore, the portion of Mr. Crenshaw's vested account balance in the subject plan that is due to be turned over to the bankruptcy trustee is in the amount of $7,380.20.

It is therefore ORDERED, ADJUDGED AND DECREED that the motion of the debtors to alter, amend or vacate the Court's previously entered Order and Memorandum Opinion be and hereby is denied to the extent that the findings of fact and conclusions of law are correct and in accordance with prevailing law.

It is also ORDERED, ADJUDGED AND DECREED that the debtors be and hereby are allowed to exempt, pursuant to Section 6–10–6, Code of Alabama (1975), the sum of

$1,800.00 from the funds heretofore ordered to be turned over to the bankruptcy trustee.

It is further ORDERED, ADJUDGED AND DECREED that the trustee of the Automatic Screw Machine Products Employees Retirement Trust turn over to the bankruptcy trustee the sum of $7,380.20.