**In the Matter of Gilbert M. BENTLEY, Jr., Charlotte A. Bentley, Debtors.**

**David A. ERICKSON, Trustee, Plaintiff,**

v.

**UNITED STATES of America, Internal Revenue Service, Iowa Department of Revenue, Gilbert M. Bentley, Jr., and Charlotte A. Bentley, Defendants.**

**Bankruptcy No. 83–826–C.
Adv. No. 87–0042.**

United States Bankruptcy Court,
S.D. Iowa.

Oct. 9, 1987.

Thomas L. Flynn, Des Moines, Iowa, for debtors.

David A. Erickson, W. Des Moines, Iowa, trustee.

John Waters, Appeals Section, Technical Services Div., Des Moines, Iowa, for Iowa Dept. of Revenue & Finance.

## MEMORANDUM OPINION

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

This matter is before the Court on the Chapter 7 Trustee's (Plaintiff's) Complaint To Determine Tax Liability brought under 11 U.S.C. § 505. In 1983 the Trustee sold a corn crop free and clear of lien with the understanding that the liens of the United States of America, on behalf of Commodity Credit Corporation (hereinafter the "CCC") would attach to the proceeds and any interest earned thereon (hereinafter, "proceeds"). In 1986 the Trustee determined that: a) the liens asserted by the CCC were valid and perfected, and b) the amount of the liens exceeded the value of the corn proceeds. Accordingly, the Trustee concluded there was no equity to be enjoyed by the estate and he applied to the Court for an abandonment of the proceeds.[1]

The Trustee filed United States and State of Iowa tax returns on behalf of the estate for the years 1984, 1985 and 1986. On December 10, 1986, the Internal Revenue Service (hereinafter, the "IRS") advised the Trustee that since the proceeds were not abandoned until 1986 the estate was liable for tax on the gain derived from the sale of corn in 1983 and the interest earned during 1984, 1985 and 1986.[2] The Trustee contends that the estate should not carry the burden of a tax liability resulting from a sale in which the estate retained no benefit and that once the proceeds were abandoned, the abandonment related back to and became effective on the date of filing.[3] The IRS takes the contrary position that

the abandonment cannot as a matter of law relate back.[4]

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to their consent and 28 U.S.C. §§ 1334, 151, and 157 and the Order of Reference of the United States District Court for the Southern District of Iowa. This is a "core proceeding," which the Court may hear and determine pursuant to 28 U.S.C. § 157(B)(2)(A), (B) and (O).

### FACTS

While the relevant facts in this controversy are straightforward, the Court adopts and incorporates the Stipulated Facts and Stipulation of Additional Facts filed jointly by the Trustee and the IRS on October 1, 1987 as if the same were fully set forth herein.

A review of the Debtors' June 3, 1983 Schedules led the Trustee to believe that substantial (approximately $16,000) equity existed for the estate in the Debtors' 1981–1982 corn crop. On October 13, 1983 the CCC filed its timely proof of claim by which the Trustee was advised that the Debtors had substantially understated the debt due the CCC secured by the 1981–1982 corn crop. In spite of this new information the Trustee and the IRS agree that at that time there still appeared to be equity for the estate in the corn.

On November 15, 1983, the Trustee arranged to have the corn sold by the U.S. Department of Agriculture. The corn was sold on November 29, 1983, December 8, 1983 and December 9, 1983 with the proceeds ($68,907.54) being placed in an interest bearing account subject to the liens of the CCC. From the date of deposit through the date of abandonment, the Trustee's account earned interest as follows:

---

1. The Trustee's abandonment appears in his Final Report, Account and Petition for Allowance, Distribution and Discharge filed June 12, 1986. After notice dated June 23, 1986, the Court on July 21, 1986 ordered the Trustee to pay the proceeds to CCC. See 11 U.S.C. § 554.

2. See Brief of the United States, pp. 1 and 2.

3. See Trustee's Trial Brief, p. 7.

4. See Brief of the United States, pp. 2 and 7.

| Year | Interest Earned |
|------|----------------|
| 1984 | $2,338.00 |
| 1985 | $5,726.00 |
| 1986 | $4,507.00 |

The Trustee eventually determined that there was no equity for the estate in the proceeds and in his final report stated that after payment of all of the proceeds to the CCC [5] that the CCC held an unsecured deficiency claim against the estate in the amount of $15,817.17. On July 21, 1986 an order of abandonment was entered with respect to the proceeds.

On December 10, 1986 the IRS issued a Notice of Deficiency indicating a tax liability for the estate as follows:

| Tax Year | Failure to File Timely Return Penalty [6] | Deficiency |
|----------|------------------|-----------|
| June 30, 1984 | $1,379.00 | $5,510.00 |
| June 30, 1985 | $ 82.00 | $ 329.00 |
| June 30, 1986 | –0– | $ 315.00 |

The Trustee's Complaint followed on March 9, 1987.

The issues in this case involve only the Trustee and the IRS. The Iowa Department of Revenue filed a *Consent To Judgment* stating that since the Trustee's returns were not selected for examination, "it is procedurally precluded from challenging the amount of tax shown due on the estate's returns." [7] The other defendants, the Debtors, filed their Answer "denying any liability for payment of any taxes" [8] but the record indicates they elected not to participate further in these proceedings.

The Trustee and the IRS agreed to submit this matter to the Court on the record, including written briefs filed October 5, 1987, since there were no disputed facts.

DISCUSSION

The IRS takes the obvious position that had the Trustee abandoned the corn outright prior to its sale any gain on such sale would not have accrued to the estate. However, once the Trustee sold the grain the proceeds became property of the estate (along with interest earned) and the estate must bear the tax thereon (See p. 7 of IRS Trial Brief).

Often a Chapter 7 trustee will enter into an agreement with an allegedly secured creditor of the estate whereby the trustee agrees to liquidate the property with all liens of the secured creditor attaching to the proceeds and accretions. The reason for this common arrangement is the mutual interest shared by the trustee and creditor in realizing the highest value of the property. In fact, the trustee is required by Section 704(1) of the Bankruptcy Code to:

"collect and *reduce to money the property of the estate* for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." (emphasis added)

In addition to his statutory duty, the trustee often finds property of the estate to be diminishing in value because it a) is perishable, b) depreciates or wastes, or 3) is subject to economic or physical obsolesence. The attributes of estate property, the requirements of law and the interests of secured creditors mandate a trustee's prompt liquidation of property of the estate.

Such a clear directive is often clouded by another duty of the trustee, namely to examine proofs of claims and object to the allowance of any claim that is improper. Bankruptcy Code Section 704(5). The nature, extent and priority of asserted liens against property of the estate often remain unresolved until judicial determination [9] Pending litigation, the trustee and creditor often agree that property may be sold and the proceeds invested. Likewise, in the case at bar the IRS agrees with the Trustee that both before and after the date the

---

5. Which included interest earned during the three years of $12,133.38 (the balance of the interest earned, $437.62 was attributable to other funds of the estate not subject to this proceeding).

6. 26 U.S.C. § 6651(a).

7. See *Consent To Judgment* filed October 5, 1987.

8. See *Answer* filed March 27, 1987.

9. Bankruptcy Rule 7001(2) and (9) requires an adversary proceeding be brought to determine these issues.

CCC filed its proof of claim, it appeared that there was some equity for the estate in the 1981–1982 corn crop (Stipulated Facts ¶ 12). The IRS does not dispute that the Trustee was justified in selling the corn crop in order to realize a perceived benefit to the estate.

Rather, the IRS argues that the Bankruptcy Tax Act of 1980 codified at Section 1398 of the Internal Revenue Code of 1986 is determinative of the issue. It provides in relevant part at 26 U.S.C. § 1398(e) that, "The gross income of the estate for each taxable year shall include the gross income of the debtor *to which the estate is entitled* under title 11 of the United States Code." (emphasis added) The IRS then reasons that since the grain was turned over to the estate and the proceeds resulting from its sale were invested by the Trustee that they were property of the estate under Section 541 and therefore taxable to it. (See Brief of United States at p. 7). Such a result does not follow, however.

The language under Title 26 speaks of the estate being entitled to the income not merely that the income is property of the estate. The concept of what constitutes property of the estate was greatly expanded by the Bankruptcy Code. See *In re Graham*, 726 F.2d 1268, 1271 (8th Cir. 1984). But being property of the estate does not mean that the estate is entitled to it. Section 554(b) permits a trustee to abandon property of the estate which is burdensome, or of inconsequential value or benefit. Once the Trustee determined that the estate held no equity in the grain (that the amount of the CCC liens exceeded the value of the corn) he abandoned it.[10] The procedure of liquidation of property of the estate with Trustee holding invested proceeds *pending a determination of entitlement* is not tantamount to the estate being entitled to it under 26 U.S.C. § 1398(e). Here, the Trustee was holding the proceeds

of the sale as a stakeholder or caretaker until a determination by consent or judicial decree of entitlement. As such, the estate was not entitled to the proceeds when the Order of Abandonment issued. The effect of abandonment revests the debtor or other designated person with all interests to the property. The purpose of abandonment is to permit the Trustee to shed excess baggage from the estate so that a maximum benefit can be delivered to estate creditors.

The effect of the IRS position would have the estate pay taxes on property to which the estate is not entitled, did not retain and from which it received no benefit (because it was all abandoned) because the proceeds became property of the estate while subject to a lien which greatly exceeded its value. Such a result will not be countenanced.[11] Accordingly, the Trustee on behalf of the estate shall not be liable for the Taxes and Penalties[12] set forth in the I.R.S. Notice of Deficiency dated December 10, 1986. The Court declines to rule upon the Trustee's alternative request for determination of qualification of 26 U.S.C. § 77 deductions on certain expense items incurred by him as being rendered moot by this decision.

An order consistent with this Memorandum Opinion will be filed simultaneously herewith.

---

10. The Court is unclear why the Trustee could not make such a decision earlier in the case but that issue has not been raised in this proceeding.

11. This holding is limited to only those instances where there is a complete abandonment of all sale proceeds prior to a discharge of the Trustee and the property is not *fully* administered by the trustee.

12. The Trustee's tax returns when filed showed no tax liability, therefore, no penalties are due.