**In re Donald L. MORROW and Sherry A. Morrow, Debtors.**

**Bankruptcy No. 90–1725–8P7.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 11, 1990.

Malka Isaak, Tampa, Fla., for debtors.

V. John Brook, St. Petersburg, Fla., trustee.

Norman Davidson, Tampa, Fla., for trustee.

## ORDER ON OBJECTION TO CLAIM OF EXEMPTIONS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is an Objection filed by the Trustee to the Debtors' claim that funds held in a Glendale Federal Savings Employees' Sheltered Pay Plan (Plan) are not property of the estate or, alternatively, are exempt from administration of the bankruptcy estate pursuant to *Fla.Stat.* § 222.21(2)(a), 11 U.S.C. § 522(b)(2)(A) or *Fla.Stat.* § 222.201(1) and 11 U.S.C. § 522(d)(10)(E). Further, the Debtors contend that the Plan constitutes an annuity and is comprised of earnings of the head of a household, which facts render the Plan independently exempt and immune from creditors under *Fla.Stat.* §§ 222.11 and 222.14. The Court has considered the Objection, together with the Debtors' Response and argument of counsel, and now finds and concludes as follows:

The Debtors filed their voluntary Petition under Chapter 7 of the Bankruptcy Code on February 26, 1990. On their original B–4 Schedule of Exemptions, the Debtors claimed Mrs. Morrow's interest in the Plan with Glendale Federal (Glendale) as exempt pursuant to Article X, § 4 of the Florida Constitution, *Fla.Stat.* Ch. 222 and "other related Florida statutes." On April 13, 1990, the Trustee filed his Objection to the Debtors' claim of the funds in the Plan as exempt, contending that the funds currently in the Plan on behalf of Mrs. Morrow are property of the estate subject to administration and cannot be claimed as exempt.

On May 16, 1990, the Debtors filed an amendment to their B–4 Schedule which again listed the Plan as exempt and noted that the value of Mrs. Morrow's interest in the Plan is $21,000.00. On the Amended B–4 Schedules, the Debtors noted that the Plan was being claimed as exempt pursuant to "29 U.S.C. 1056(d), 11 U.S.C. 522(d)(10), *Fla.Stat.* 222.201, *Fla.Stat.* 222.-21 and principles of Florida law."

The record reveals that Mrs. Morrow is 42 years old and is presently unemployed. Previously, Mrs. Morrow was employed by Glendale as a vice-president and the manager of a Glendale branch located in Venice, Florida, where she earned a salary of $40,000 per year. On June 29, 1990, she terminated her employment by a mutual agreement with Glendale and subsequently moved with her husband to Ohio.

Mr. Morrow has a high school education, has been employed as a banker, and for the last two years has operated a lawn maintenance business. Mr. Morrow is also presently unemployed.

The Morrows have one son, who is 22 years old. The Morrows furnish support for their son, who does not live with them, but apparently their son has a medical condition which prevents him from maintaining a job. The record does not indicate the extent of support provided by the Morrows to their son. However, the evidence established at the final hearing in this matter reveals that the Morrows' son has medical insurance, thus presumably the Morrows' support of their son is curtailed at least to the extent of the insurance coverage.

The Plan is funded by contributions made by Mrs. Morrow which are matched by the company, which range from 1% to 6% of Mrs. Morrow's compensation. Further, Glendale makes an annual contribution in an amount equal to a percentage of compensation paid to Mrs. Morrow. Article IV of the Plan provides that Glendale shall maintain a company matching contribution account, a prior profit-sharing account, a company PAYSOP contributions account, a post-tax voluntary contributions account and a deferral account for each plan participant.

Article VI of the Plan provides that upon 90 days prior written notice, the plan participant may withdraw up to 100% of the value of his post-tax voluntary contributions account and the company matching contributions account. The plan participant may withdraw from his deferral account only in the event of financial hard-

ship, which must be established to the satisfaction of the plan committee. Further, in the event of financial hardship such as the purchase of a principal residence, medical expenses, educational expenses, the plan participant may borrow from the Plan.

Plan participants are entitled to receive their interest in the Plan upon retirement, disability, death, or upon termination of employment, when the plan participant may obtain the value of his deferral account, company PAYSOP contributions account, post-tax voluntary contributions account, and the vested portion of his company matching contributions account and prior profit-sharing account. In the event the plan participant terminates employment before he is 100% vested, a forfeiture of the nonvested portion of the company matching contributions account and prior profit-sharing accounts occurs. It is undisputed that Mrs. Morrow's interests in the Plan are 100% vested, and as she has terminated her employment, she is entitled to receive her entire interest in the Plan immediately. It is further undisputed that Mrs. Morrow made some contributions to the Plan post-petition, however, that amount is not established by the record.

The threshold question in resolving this matter is whether or not Mrs. Morrow's interests in the Plan are even property of the estate under 11 U.S.C. § 541. If Mrs. Morrow's interests in the Plan are excluded from the estate, the Debtors' contention that Mrs. Morrow's interests in the Plan are exempt are, of course, moot. 11 U.S.C. § 541 provides ...

> Except as provided in subsection (b) and (c)(2) of this section, all legal and equitable interests of the debtor in property as of the commencement of the case are properties of the estate.

In turn, § 541(c)(2) provides that

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

Because all ERISA plans contain anti-alienation provisions required by the Internal Revenue Code in order to make contributions to an ERISA plan tax exempt, it is argued that the anti-alienation provision required by ERISA constitutes "applicable nonbankruptcy law" and thus, Mrs. Morrow's interests in the Plan are not property of the estate. This argument was recently upheld by the Fourth Circuit Court of Appeals in the case of *Anderson v. Raine (In re Moore)*, 907 F.2d 1476 (4th Cir.1990), whereby the Fourth Circuit determined that ERISA's mandatory anti-alienation provision deems to qualify ERISA "applicable nonbankruptcy law" and, therefore, the interests of debtors in ERISA-qualified profit-sharing and pension plans are excluded from property of the estate. *See also In re Burns*, 108 B.R. 308 (Bankr.W.D.Okla.1989); *In re Komet*, 104 B.R. 799 (Bankr.W.D.Tex.1989).

Notwithstanding the foregoing, the law is clear in this Circuit that "applicable nonbankruptcy law" refers only to state spendthrift trust law, and the anti-alienation language required in ERISA plans by 29 U.S.C. § 1056(d) does not qualify as applicable nonbankruptcy law. *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985). *See also In re Daniel*, 771 F.2d 1352 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *In re Graham*, 726 F.2d 1268 (8th Cir.1984); *In re Goff*, 706 F.2d 574 (5th Cir.1983).

Thus, it is necessary to consider whether the Plan under consideration constitutes a spendthrift trust under Florida law. As noted by this Court in *In re Martin and In re Langford*, 119 B.R. 297 (Bankr.M.D.Fla.1990); and *In re Gardner, In re Parrish, and In re Palmer*, 118 B.R. 860 (Bankr.M.D.Fla.1990) and cases cited therein, courts have refused to classify interests in ERISA plans as spendthrift trusts because in many instances the debtor has the ability to reach and manipulate his interest in the plan even if to do so would terminate his interest in the plan. Further, courts have considered the fact that the employee may generally borrow against the plan and may withdraw his contributions to the plan under certain circumstances. However, there is no question that the analysis of whether a plan constitutes a spendthrift trust depends on

the facts developed in each case. *John Hancock Mutual Life Insurance Co. v. Watson (In re Kincaid)*, 917 F.2d 1162 (9th Cir.1990).

Under Florida law, the purpose of a spendthrift trust is to protect the beneficiary, not only from himself, but also from his creditors. *Croom v. Ocala Plumbing & Electric Co.*, 62 Fla. 460, 57 So. 243 (1911). The typical spendthrift trust bars the voluntary or involuntary alienation of the beneficiary's interest in his right to receive the trust income. *Waterbury v. Munn*, 159 Fla. 754, 32 So.2d 603 (1947). Where the beneficiary has the ability to require the trust administrator to convey trust property to him or her, the beneficiary has dominion and control over the trust res sufficient to defeat the validity of the spendthrift trust.

■ Thus, in the last analysis, the ultimate question is whether Mrs. Morrow's ability to reach her interests in the Plan rises to the level of asserting a sufficient degree of dominion and control over the funds in the Plan, thus to negate any spendthrift character the Plan may have. Under the Plan, Mrs. Morrow may reach her vested interest under the Plan upon termination of employment, death, retirement, or disability. The features of this plan permitting Mrs. Morrow to reach funds in the Plan by voluntarily terminating her employment and to borrow or withdraw from the Plan in the event of hardship are certainly inconsistent with any recognized character aspects of a classical spendthrift trust under Florida law. Moreover, Mrs. Morrow has terminated her employment, her interests are 100% vested: therefore, she is able to receive her interests in the Plan immediately. Based on the foregoing, this Court is satisfied that the Plan is not a spendthrift trust, and as such, the funds in the Plan are property of the estate.

■ It is urged by the Debtors that even assuming Mrs. Morrow's interests in the Plan are property of the estate, they are exempt pursuant to *Fla.Stat.* § 222.21(2)(a). This Section enacted by the Florida Legislature in 1987 provides as follows:

(2)(a) Except as provided in paragraph (b), any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in a retirement or profit-sharing plan that is qualified under s. 401(a), s. 403(a), s. 403(b), s. 408, or s. 409 of the Internal Revenue Code of 1986, as amended, is exempt from all claims of creditors of the beneficiary or participant.

The availability of the exemption provided by this Statute to Florida residents has been considered by this Court in cases such as *In re Gardner, supra,* 118 B.R. at 860; *In re Bryant and In re Partsch,* 106 B.R. 727 (Bankr.M.D.Fla.1989); and *In re Sheppard and Polombo,* 106 B.R. 724 (Bankr. M.D.Fla.1989), where this Court found that based on the decision of the Supreme Court in *Mackey v. Lanier Collections Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), ERISA preempts *Fla.Stat.* § 222.21(2)(a) and thus, *Fla.Stat.* § 222.21(2)(a) is void. In *Mackey,* the Supreme Court held that a Georgia statute which purported to immunize funds in a 401–K plan from garnishment asserted by a creditor was invalid by virtue of the doctrine of federal preemption, based on § 514(a) of ERISA [29 U.S.C. § 1144(a) ] which provides:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter IV of this chapter *shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan* as described in section 1003(a) of this title and not exempt under section 1003(b) of this title. (emphasis added).

It follows that because *Fla.Stat.* § 222.21(2)(a) "relates to" ERISA and is therefore preempted, the Debtors' argument in this regard must fail.

■ To escape the inescapable conclusion that the funds in the ERISA plans may not be claimed and allowed as exempt pursuant to *Fla.Stat.* § 222.21(2)(a), the Debtors also rely on 11 U.S.C. § 522(b) which permits a debtor to choose either the

federal exemptions listed in 11 U.S.C. § 522(d) or those provided by state law *and* also "any property that is exempt under Federal law, other than subsection (d) of this section …" § 522(b)(2)(A). Thus, the Debtors contend that because of the anti-alienation provisions in ERISA plans required by the Internal Revenue Code, ERISA itself creates a specific non-bankruptcy federal exemption within the meaning of § 522(b)(2)(A).

Under the prevailing authority in this Circuit, this argument must also fail. As stated by the Eleventh Circuit Court of Appeals in *In re Lichstrahl, supra,* 750 F.2d at 1491:

> The House and Senate reports on § 522(b)(2)(A) provide a list of property that can be exempted under federal laws. ERISA-qualified pension plans are not included. Although Congress may not have intended the list to be exhaustive, the failure to include ERISA is nonetheless indicative of congressional intent. Congress knew of the much-debated and comprehensive statute when it issued the House and Senate reports on § 522(b)(2)(A) in 1977 and 1978, and yet it did not include ERISA in those reports. *Matter of Goff,* 706 F.2d at 585; *see also In re Graham,* 726 F.2d 1268, 1274 (8th Cir.1984). Congress, however, did refer to ERISA in other sections of the Bankruptcy Code. Of particular importance is ERISA's inclusion within the alternative federal exemptions listed in § 522(d). The failure to mention ERISA in connection with § 522(b) was intentional. *Matter of Goff,* 706 F.2d at 585.

The court in *Lichstrahl* went on to note that the list of property exempted under federal law, which includes Social Security payments, wages of fishermen, Railroad Retirement Act benefits, Foreign Service Retirement and Disability payments, among others, can be distinguished from ERISA benefits. ERISA was designed by Congress to regulate private employer pension plans, while the list of exemptions referred to in the legislative history of § 522(b)(2)(A) are all "peculiarly federal in nature, created by federal law or related to industries traditionally protected by the

federal government." *Id.* at 1491, quoting *In re Graham, supra,* 726 F.2d at 1274. Based on the foregoing, the Eleventh Circuit Court of Appeals concluded that § 522(b)(2)(A) did not provide a non-bankruptcy federal exemption. *See also In re Daniel,* 771 F.2d 1352 (9th Cir.1985), *cert. denied* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *In re Graham, supra,* 726 F.2d at 1268; *In re Goff, supra,* 706 F.2d 574 (5th Cir.1983). *Contra In re Messing,* 114 B.R. 541 (Bankr.E.D.Tenn. 1990).

Based on the weight of authority, this Court is satisfied that ERISA does not qualify as a separate federal exemption for purposes of 11 U.S.C. § 522(b)(2)(A).

■ Next, the Debtors rely on *Fla.Stat.* § 222.201(1) which provides

> notwithstanding § 222.20, an individual debtor under the Bankruptcy Reform Act of 1978 may exempt, in addition to any other exemptions allowed under state law, any property listed in subsection (d)(10) of s. 522 of that Act.

In turn, § 522(d)(10)(E) provides an exemption for the debtor's right to receive:

> (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—....

> (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

> (ii) such payment is on account of age or length of service; and

> (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408, or 409).

Thus, the Debtors argue that as Florida has essentially opted back in to a limited extent and made 11 U.S.C. § 522(d)(10) available to Florida debtors, the Plan is

exempt under § 522(d)(10)(E) and not subject to administration by the Trustee.

Even assuming without admitting that Florida, through the enactment of *Fla. Stat.* § 222.201(1), may selectively opt back in to the federal exemption scheme provided by § 522(d) of the Bankruptcy Code, which is a question not without serious doubt, this Court is satisfied that Mrs. Morrow's right to receive payments under the Plan is not actually on account of illness, disability, death, age or length of service. Further, payments under the Plan are not necessary for Mrs. Morrow's support or the support of her dependents. Both Mrs. Morrow and her husband have marketable skills, and in the past have been able to generate incomes sufficient to cover their living expenses. Both Mrs. Morrow and her husband are in good health, and although their son has undescribed health problems, this Court has no problem concluding that Mrs. Morrow and her husband will be able to earn a living to support themselves and their son without the benefit of payments received from the Plan.

■ Next, the Debtors argue that the Plan is exempt pursuant to *Fla.Stat.* § 222.11 which provides as follows:

> ... no writ of attachment or garnishment or any other process shall issue from any of the courts of this state to attach or delay the payment of any money or other thing due to any person who is the head of a family residing in this state, when the money or other thing is due for the personal labor or services of such person.... This exemption shall apply to any wages deposited in any bank account maintained by the debtor when such funds can be traced and properly identified as wages.

Under Florida law, this exemption should be liberally construed in order to prevent the debtor from becoming a public charge. *Killian v. Lawson,* 362 So.2d 1007 (Fla. 4th DCA 1978). Even assuming for purposes of discussion that Mrs. Morrow is the head of her family and can trace and identify funds deposited into the Plan, this Court is satisfied that these funds lost their character as wages when they were invested through the Plan. Clearly, contributions made to an ERISA plan are not akin to wages deposited for savings or everyday living expenses in a bank account. Therefore, this Court is satisfied that the Debtor's argument that Mrs. Morrow's interests in the Plan are exempt as wages must fail.

■ As a final argument, the Debtors claim the Plan is exempt pursuant to *Fla. Stat.* § 222.14, which protects from the reach of creditors "the cash surrender value of life insurance policies ... and the proceeds of annuity contracts." The Debtors contend that the Plan is an annuity and thus may be claimed as exempt under the Statute. *Black's Law Dictionary,* (5th ed., 1983) defines an annuity as "a right to receive fixed periodic payments, either for life or for a term of years." One of the characteristic traits of an annuity, as indicated by this definition, is that the recipient receives *fixed* payments. Under Mrs. Morrow's Plan, the amount to be received by her will vary, based upon the manner in which the Plan contributions are invested. Thus, it is this Court's considered opinion that the Plan is not an annuity and thus cannot be claimed as exempt pursuant to *Fla.Stat.* § 222.14.

Upon consideration of the foregoing, this Court is satisfied that the Trustee's Objection should be sustained, and the Debtors' claim of the Plan as exempt should be disallowed.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Trustee's Objection be, and the same is hereby, sustained, and the Debtors' claim of Mrs. Morrow's interest in the Plan with Glendale as exempt be, and the same is hereby, disallowed. It is further

ORDERED, ADJUDGED AND DECREED that the Trustee shall proceed to administer the funds in the Plan for the benefit of the estate.

DONE AND ORDERED.