## In re Michael K.C. ATALLAH, Debtor.

### Bankruptcy No. 87–03181S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 18, 1989.

---

Robert Williamson, Media, Pa., for debtor.

Christopher G. Kuhn, Philadelphia, Pa., trustee.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

A. INTRODUCTION

We are called upon in the present case to determine if the Debtor's Individual Retirement Accounts (hereinafter referred to as "IRAs") constitute property of the estate or whether they are excluded therefrom by operation of 11 U.S.C. § 541(c)(2). For the reasons discussed herein, we conclude that the exclusionary provisions of § 541(c)(2) are limited to restraints on transfer that are enforceable under state spendthrift trust law. We further conclude that the Debtor's IRAs do not qualify as "spendthrift trusts" under Pennsylvania law. Therefore, we reject the Debtor's contention that his IRAs are excluded from property of his estate by operation of § 541(c)(2). We do not determine the issues of the possible exemption of the Debtor's IRAs under state or federal exemption laws since no such exemptions are presently claimed by the Debtor.

B. PROCEDURAL HISTORY

Michael K.C. Atallah (hereinafter referred to as "the Debtor"), filed a voluntary Petition under Chapter 7 of the Bankruptcy Code on June 26, 1987. Christopher G. Kuhn, Esquire (hereinafter "the Trustee") was appointed Interim Trustee of the Debtor's estate by order of this Court dated June 27, 1987.

On June 26, 1987, the Debtor filed his original Schedules of Assets and Liabilities and Statement of Financial Affairs, including Schedule B-2, setting forth his Personal Property, and Schedule B-4, reciting Property Claimed as Exempt (hereinafter "the original Schedules"). In the original Schedules, the Debtor listed four separate IRAs with a combined listed value of $8,373.75. The Debtor also claimed that $7,900.00 of the IRAs was exempt pursuant to 11 U.S.C. § 522(d)(5).[1]

On June 21, 1988, the Trustee filed an Objection to the Debtor's Claim of Exemption alleging that the Debtor's claim of exemption for this IRAs exceeded the maximum allowable amount of such exemption under § 522(d)(5). The Trustee's Objection was originally scheduled for a hearing on July 19, 1988. After a number of contin-

---

1. 11 U.S.C. § 522(d)(5) allows a debtor who chooses the federal exemptions set forth in the Bankruptcy Code to claim a general exemption of the debtor's interest in any property not to exceed in value $400.00, plus up to $3,750.00 of any unused amount of the $7,500.00 exemption provided for the debtor's residence. It would appear that, under § 522(d)(5), the Debtor was limited to a $4,150.00 claim in all property not otherwise exempt.

uances, this matter was finally scheduled for and proceeded to a hearing on October 18, 1988. Also on that date, the Debtor filed his Answer to the Trustee's Objection and an Amended Schedule B-4.[2] The Debtor's Amended Summary of Debts and Property asserted that $8,346.75, constituting the Debtor's interest in his IRAs, should be excluded from the Debtor's bankruptcy estate altogether.

At the hearing on October 18, 1988, counsel appeared and indicated that they wished the matter to be considered upon a Stipulation of Facts. The court entered an Order providing the Trustee and the Debtor with an opportunity to submit a written Stipulation of Facts and Opening and Reply Briefs in the case. Pursuant or our Order, Opening Briefs were due on November 7, 1988, and Reply Briefs were due November 23, 1988. These dates were later extended for one week by agreement of the parties. The parties' Stipulation of Facts and the Trustee's Memorandum of Law in Support of the Trustee's Objection were filed on November 14, 1988. The Debtor's brief was filed on November 17, 1988. The Debtor also filed a Reply Brief on November 23, 1988, while the Trustee declined an opportunity to do likewise. The parties' Stipulation of Facts in this matter is incorporated within the preceding procedural history and the following Findings of Fact.

## C. FINDINGS OF FACT

The Debtor has four (4) IRAs. Three of the Debtor's IRAs are held in trust at the Philadelphia Savings Fund Society (hereinafter "PSFS"), and are valued at $1,128.44, $2,182.69, and $2,220.94, respectively. The fourth IRA, in the amount of $2,841.68, is held in trust by the Navy Federal Credit Union. Each IRA was established prior to the Debtor's Chapter 7 filing.

Each of the IRAs was established under the terms of an Individual Retirement Custodial Account Agreement (hereinafter "the IRA Agreements"). For each IRA Account, the Debtor is both the "depositor" and the "beneficiary" as those terms are defined in the IRA Agreements.

Each of the IRA Agreements contains certain "anti-alienation" provisions. The IRA Agreements provide that amounts deposited in the IRA Account may be distributed to the depositor when he or she attains age 59½ or becomes disabled (Exhibit B to Stipulation of Facts, Article VI, para. 6.1). Article IX of the IRA Agreements also provides as follows:

*Nonassignability of Benefits: Prohibited Transactions.* Except to the extent otherwise required by law, none of the benefits, payments or proceeds due any Participant, spouse of a Participant or Beneficiary hereunder shall be subject to the claims of any creditor of such Participant, spouse or Beneficiary. Except to the extent permitted by law, no Participant, spouse or Beneficiary shall have any right to anticipate, sell, assign, or otherwise alienate the assets of the Custodial Account or any benefits which may be payable under this Agreement prior to distribution of such assets pursuant to this Agreement. Neither the Depositor nor the Depositor's spouse nor the Depositor's Beneficiaries under this Agreement shall use the Custodial Account or any part thereof as security for a loan, nor shall the Depositor, the Depositor's spouse or Beneficiaries under this Agreement, the Custodian and any other disqualified person with respect to the Custodial Account engage in any transaction prohibited by the Code or the Employee Retirement Income Security Act of 1974 ("ERISA") with respect to such Custodial Account.

Article IV of the IRA Agreements provides that a depositor's interest in his or her IRA Account "shall at all times be fully vested and nonforfeitable ...," but shall be subject to charges and penalties imposed by FDIC regulations for premature withdrawal.

The Debtor does not claim any present right to distribution under Article VI of the IRA Agreements, presumably because he is neither 59½ years of age nor disabled. However, there does not appear to be any

---

**2.** The Trustee has not objected to the timeliness       of the Debtor's Answer to his Objection.

express provision in the IRA Agreement prohibiting the Debtor from making a "premature withdrawal" of his interest in the IRAs. Indeed, Article VII of the IRA Agreements requires a depositor to provide PSFS with a declaration of intention as to the disposition of any amount distributed, except in the case of the depositor's death, disability, or attainment of age 59½. The clear implication of this provision is that a distribution may be made even though the depositor is neither disabled nor 59½ years old.

It was stipulated by the parties that if the Debtor were to obtain a premature distribution of the funds in his IRAs, he would "suffer an adverse tax consequence." Exhibit C is a letter from the Debtor's accountant, William H. McCue (hereinafter "McCue"), estimating the Debtor's tax liability if the Debtor's IRAs had been distributed in June, 1987. According to McCue, such a distribution would have been both taxable as ordinary income (estimated liability—$2,986.85) and subject to a ten (10%) percent tax on premature distribution from IRAs (estimated liability—$853.39).

## D. CONCLUSIONS OF LAW/DISCUSSION

While this case arose originally upon the Trustee's objection to the Debtor's claim of exemption under 11 U.S.C. § 522(d)(5), this objection has been rendered moot by the Debtor's amendment of the original Schedules. The issue now presented before the court is whether the Debtor's IRAs are included within his bankruptcy estate.

The Debtor here claims that his IRAs are excluded from property of the estate by operation of 11 U.S.C. § 541(c)(2). He has not claimed that such assets are exempt under § 522(d)(10)(E). In any event, it appears that § 522(d)(10)(E) applies to payments of retirement benefits and not to the corpus of a retirement trust account. *See In re Clark*, 711 F.2d 21 (3d Cir.1983) (§ 522(d)(10)(E) does not exempt a Keogh retirement plan where the debtor has no present right to receive payments). Since the Debtor has chosen the federal rather

than the state exemptions, we need not address the issue of whether his IRAs are exempt under other federal law as provided in 11 U.S.C. § 522(b)(2)(A). *But see In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985) (ERISA not among "other federal law" exemptions of § 522(b)(2)(A)). *Accord, In re Daniel*, 771 F.2d 1352 (9th Cir.1985), *cert. denied sub nom. Daniel v. Security Pacific National Bank*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986). Neither do we address the issue of whether the Debtor's IRAs would be exempt under the applicable state exemption found at 42 Pa.C.S. § 8124(b)(1)(vii). *See Marine Midland Bank v. Surfbelt, Inc.*, 532 F.Supp. 728, 730 (W.D.Pa.1982) (judgment debtor must show amount deducted as IRA contribution for federal income tax purpose to qualify for exemption under § 8124(b)(1)(vii); and *Industrial Valley Bank v. Rosenfield*, 13 PHILA. CO.RPTR. 559, 566–67, 37 Pa.D. & C.3d 621 (1985) (IRA exempt under 42 Pa.C.S. § 8124(b)(1)(vii)). We shall first address first the scope of the exemption from property of the estate provided in 11 U.S.C. § 541(c)(2).

I. SECTION 541(c)(2) OF THE BANKRUPTCY CODE EXCLUDES FROM PROPERTY OF THE DEBTOR'S ESTATE, A RESTRICTION ON THE TRANSFER OF THE DEBTOR'S BENEFICIAL INTEREST IN A TRUST THAT WOULD BE ENFORCEABLE UNDER PENNSYLVANIA SPENDTHRIFT TRUST LAW

Section 541(a)(1) of the Bankruptcy Code provides that the debtor's estate is comprised of "all legal or equitable interests" of the debtor in both tangible and intangible property "wherever located and by whomever held." Both the House and the Senate Reports indicate that

[t]he scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action, ... and all other forms of property currently specified in section 70a of the Bankruptcy Act § 70a, as well as property recovered by the trustee under section 542 of proposed title 11, if the

property recovered was merely out of the possession of the debtor, yet remained "property of the debtor." The debtor's interest in property also includes "title" to property, which is an interest, just as are a possessory interest, or leasehold interest, for example.

S.REP. NO. 95–989, 95th Cong., 2d Sess. 82–83 (1978); H.R.REP. NO. 95–595, 95th Cong., 1st Sess. 367–68 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, 6323. Section 541(a) has consistently been interpreted very broadly. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983); and *In re TM Carlton House Partners, Ltd., TM Carlton House Partners, Ltd., et al. v. Career Planners, Inc., et al.,* 93 B.R. 859, 865–66 (Bankr.E.D.Pa. 1988). It has, consequently, been broadly applied to issues relating to exemptions. *See In re 48th Street Steakhouse, Inc.,* 835 F.2d 427 (2d Cir.1987), *cert. denied sub nom. Rockefeller Group, Inc. v. 48th Street Steakhouse,* — U.S. —, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988) (leasehold or mere possessory interest in property); *In re Rigden,* 795 F.2d 727 (9th Cir.1986) (right of redemption subsequent to foreclosure sale); *In re Roberts,* 81 B.R. 354 (Bankr.W.D.Pa.1987) (pension plan established pursuant to ERISA included in estate); and *In re Hardage,* 69 B.R. 681 (Bankr.N.D.Tex.1987); (crops in existence on date of filing). *See also In re Wright,* 39 B.R. 623, 624 (D.S.C.1983), *aff'd sub nom. Hovis v. Wright,* 751 F.2d 714 (4th Cir.1985); and 4 COLLIER ON BANKRUPTCY, ¶ 541.06, at 541–42 (15th ed. 1988).

The inclusive nature of § 541 is reflected in § 541(c)(1)(A) which provides that "an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law ... that restricts or conditions transfer of such interest by the debtor." [3] An ex-

ception to this general rule is found in § 541(c)(2) which provides as follows:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

The controversy in this and other cases construing § 541(c)(2) surrounds interpretation of the term "applicable nonbankruptcy law." The Debtor here maintains that the term includes Pennsylvania exemption statutes which specifically exempt from execution the retirement fund of any self-employed person. 42 Pa.C.S. § 8124(b)(1)(vii). The Trustee counters by arguing that the term is limited to state spendthrift trust law. The Trustee further maintains that the Debtor's IRAs do not qualify as a valid spendthrift trust under Pennsylvania law and, as a result, they are not excluded from property of the Debtor's estate by operation of § 541(c)(2).

It appears that a majority of courts that have considered the issue have concluded that the term "applicable non-bankruptcy law" refers only to state spendthrift trust law. *Daniel, supra,* 771 F.2d at 1360; *Lichstrahl, supra,* 750 F.2d at 1490; *In re Graham,* 726 F.2d 1268, 1271–72 (8th Cir.1984); *In re Goff,* 706 F.2d 574, 581–88 (5th Cir.1983); *In Vogel,* 78 B.R. 192, 195 (Bankr.N.D.Ill.1987); and *In re O'Brien,* 50 B.R. 67, 72 (Bankr.E.D.Va. 1985). *See also Regan v. Ross,* 691 F.2d 81, 84–85 (2d Cir.1982) (pension benefits are subject to income deduction order to fund Chapter 13 plan notwithstanding § 541(c)(2)). Other courts have interpreted the term to include the federal Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. (hereinafter "ERISA"), and have found ERISA-qualified plans to be excluded from property of the estate by operation of § 541(c)(2). *See In re Ralstin,* 61 B.R. 502, 504 (Bankr.D.Kan.1986); *Warren v. G.M. Scott & Sons,* 34 B.R. 543, 544–46 (Bankr.S.D.Ohio 1983); *In re Holt,* 32 B.R. 767, 772 (Bankr.E.D.Tenn.1983); *In*

---

**3.** Of course, the estate only includes those interest possessed by the debtor, and any limitations on the debtor's interest are equally applicable to the property of the estate with the exception of

defenses which are personal to the debtor. 4 COLLIER, *supra,* ¶ 541.06, at 541–26. *See In re Rouse,* 48 B.R. 236, 240 (Bankr.E.D.Pa.1985).

*re Pruitt,* 30 B.R. 330, 331 (Bankr.D.Colo. 1983); *In re Threewitt,* 24 B.R. 927, 929–30 (D.Kan.1982); and *In re Rogers,* 24 B.R. 181, 182–83 (Bankr.D.Ariz.1982). A minority view suggests that the term "applicable non-bankruptcy law" applies to all law that might normally apply outside of the bankruptcy setting, including ERISA. *In re Mosley,* 42 B.R. 181, 191 (Bankr.D.N.J. 1984). *See also In re Sawdy,* 49 B.R. 383, 385 (Bankr.W.D.Pa.1985). The Debtor here maintains that "applicable non-bankruptcy law" includes state exemption statutes.

We are inclined to agree with those courts that have concluded that the term "applicable non-bankruptcy law" in § 541(c)(2) refers to state spendthrift trust law. While this issue has not been addressed by the Third Circuit, this appears to be the majority view among the bankruptcy courts in this Circuit. *In re Hysick,* 90 B.R. 770, 773 (Bankr.E.D.Pa.1988); *In re Heisey,* 88 B.R. 47, 50 (Bankr.N.J.1988); *In re Babo,* 81 B.R. 389, 391 (Bankr.W.D. Pa.1988); *Roberts, supra,* 81 B.R. at 374. *Contra, Sawdy, supra,* 49 B.R. at 385; and *Mosley, supra,* 42 B.R. at 191. We adopt this view for a number of reasons.

First, the meaning of the term "applicable non-bankruptcy law" is ambiguous, requiring us to look to the legislative history of § 541(c)(2) for assistance in interpretation. The legislative history indicates that Congress intended this language in § 541(c)(2) to apply only to spendthrift

trust law. The House Report on their bill, H.R. 8200, states as follows:

> The bill makes significant changes in what constitutes property of the estate. Current law is a complicated melange of references to state law, and does little to further the bankruptcy policy of distribution of the debtor's property to this creditor in satisfaction of his debt ... the bill determines what is property of the estate by a simple reference to what interests in property the debtor has at the commencement of the case. This includes all interests ... whether or not transferrable by the debtor ... The bill also continues over [from the Act] *the exclusion of property of the estate of the debtor's interest in a spendthrift trust* to the extent the trust is protected from creditors under applicable state law. The bankruptcy of the beneficiary should not be permitted to defeat the legitimate expectations of the settlor of a trust (emphasis added).

H.R.REP. NO. 595, *supra,* at 175–76, U.S. Code Cong. & Admin.News 1978, p. 6136. The Senate Report likewise states that § 541(c)(2) *"preserves* restrictions on a transfer of a *spendthrift trust* ... enforceable [under] non-bankruptcy law" (emphasis added). S.REP. NO. 95–989, *supra,* at 83, U.S.Code Cong. & Admin.News 1978, p. 5869. The Senate version of the Code only excluded such property to the "extent of the income reasonably necessary for the support of the debtor and his dependents." [4] Congress ultimately passed the

---

**4.** The Senate version reflects the Recommendation of the Commission on the Bankruptcy Laws of the United States that "a restriction on the transfer of a beneficial interest in a trust created for his support which is enforceable under applicable non-bankruptcy law shall be enforceable against the trustee only to the extent of the income reasonably necessary for the support of the debtor and his dependents" H.R. DOC. NO. 93–137, 93rd Cong., 1st Sess., Pt. II, at 147–148 (1973), reprinted in 2 COLLIER APPENDIX, *supra,* PII–i, at 147–48. The Commission Report contains the following passage explaining with recommendation:

> 5. Spendthrift Trusts.
> Under the existing Act, the trustee does not succeed to beneficial interests subject to spendthrift restraints. This is so since the present Act requires that the interests be

alienable or amenable to creditors' process under local law and, by definition, such interests are not. There is no sound justification for permitting a debtor to take advantage of the Bankruptcy Act and, at the same time, to shield from his creditors assets because local law does not allow creditors to reach his interest. The Commission generally recommends that these restraints not be enforceable. However, in recognition of the possibility that the spendthrift trust may be used to protect one incapable of providing for his own welfare, the debtor should be allowed to retain sufficient income to support himself and his dependents. But to the extent the beneficial interest is of a value in excess of the reasonable support needs of the debtor and his dependents. But to the extent the beneficial interest is of a value in excess of the reasonable support needs of the debtor

less restrictive house version of § 541(c)(2). *See* 124 CONG.REC. H11089, 11096 (daily ed. Sept. 28, 1978) (statement by Rep. Edwards). ("Section 541(c)(2) follows the position taken in the House bill ... with respect to income limitation on spendthrift trust").

There are two aspects of the legislative history which support the view that § 541(c)(2) is restricted in application to state spendthrift trust law. First, and most obvious, is the specific reference to spendthrift trusts. 4 COLLIER, *supra,* ¶ 541.23, at 541-109 (both Committee reports explicitly indicate that § 541(c)(2) was meant to preserve the existence of spendthrift trusts). *Contra Threewitt, supra,* 24 B.R. at 929 (statute does not state that "applicable non-bankruptcy law" is limited to state spendthrift trust law).

In addition, however, it is apparent from the legislative history that § 541(c)(2) was meant to preserve the pre-Code law with respect to the Debtor's beneficial interest in a trust. Under § 70(a)(5) of the former Bankruptcy Act, former 11 U.S.C. § 110(a)(5), the trustee in bankruptcy was vested with the title of the bankrupt to all property which, prior to the filing of the petition, he could have transferred by any means or which as subject to levy, seizure, or judicial sale. A debtor's interest did not pass to the trustee unless it could be transferred by the debtor or reached by creditors by some judicial process. *Segal v. Rochelle,* 382 U.S. 375, 379-81, 86 S.Ct. 511, 514-16, 15 L.Ed.2d 428 (1966); *In re Kerr,* 65 B.R. 739, 742 (Bankr.D.Utah 1986); 4A COLLIER ON BANKRUPTCY, ¶ 70.15(a), at 137 (14th ed. 1978). The purpose of former § 70(a)(5) was "to secure for creditors everything of value the bank-

rupt may possess in alienable or leviable form when he file[d] his petition." *Segal, supra,* 382 U.S. at 379, 86 S.Ct. at 514. *See also In re Turpin,* 644 F.2d 472 (5th Cir.1981) (trusts created by an employer to pay retirement benefits to the debtor are not property of estate). The status of trusts under § 70(a)(5) of the Bankruptcy Act was thusly discussed by the Eighth Circuit in *Graham, supra,* 726 F.2d at 1271:

Under this transferability-leviability standard, a bankrupt's beneficial interest in a trust was not part of the estate if the interest could not be transferred or levied upon under state law. *See Eaton v. Boston Safe Deposit & Trust Co.,* 240 U.S. 427, 429, 36 S.Ct. 391, 392, 60 L.Ed. 723 (1916); *In re McLoughlin,* 507 F.2d 177, 181 (5th Cir.1975); *In re Ahlswede,* 516 F.2d 784, 786 (9th Cir.), *cert. denied,* 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975). Thus to the extent a state recognized the validity of a spendthrift trust provision, the trustee in bankruptcy had no rights to the trust funds. *First Northwestern Trust Co. v. Internal Revenue Service,* 622 F.2d 387 (8th Cir. 1980).

Therefore, it appears that Congress intended to preserve an exclusion from property of the estate only for trusts that are neither leviable nor transferable.[5]

In his Brief, the Debtor suggests that his IRAs are "ERISA-qualified" and should be excluded from the estate because "ERISA-mandated restrictions on alienation" are enforceable under Pennsylvania law. However, it appears that a majority of courts considering this argument have concluded that a pension fund is not excluded from

---

and his dependents, the interest should be available to the debtor's creditors.
H.R. DOC. NO. 93-137, 93rd Cong., 1st Sess., Pt. I, at 197-198 (1983), reprinted in 2 COLLIER APPENDIX, *supra,* PI-i, at 197-98.

**5.** The fact that Congress provided for an exemption of certain pensions or similar plans under § 522(d)(10)(E) does not establish a Congressional intent to include all pension and retirement funds in the debtor's estate. *McClean v. Central States, S & S Areas Pension Fund,* 762 F.2d 1204, 1207 (4th Cir.1985); *Goff, supra,* 706

F.2d at 587; and *Threewitt, supra,* 24 B.R. at 929-30. Indeed, it would appear, in light of the Third Circuit's decision in *Clark, supra,* that § 522(d)(10)(E) was meant to apply to payment of such pension or retirement benefits and does not apply to the corpus of the trust fund. Thus, we conclude, as did the Court in *Goff,* 706 F.2d at 587, that "Section 522(d)(10)(E) does not preclude consideration of qualified pension plans under the Section 541 exclusion provision so long as they qualify as a 'spendthrift trust' under applicable state law."

the estate simply because it complies with the requirements of ERISA. *Graham, supra,* 726 F.2d at 1273 (ERISA retirement plan trust funds not exempt); *Goff, supra,* 706 F.2d at 580 (Congress did not intend to create an ERISA-plan exemption in § 541(c)(2)); and *Mosley, supra,* 42 B.R. at 190 (per se exclusion of ERISA plans not appropriate). *See also Roberts, supra,* 81 B.R. at 374 (ERISA-qualified pension plan is excluded from estate only if plan constitutes a spendthrift trust under Pennsylvania law). *Contra Threewitt, supra,* 24 B.R. at 929 (ERISA anti-alienation provisions enforceable against general creditors also enforceable against trustee).

In addition, even if ERISA "qualification" would exempt a retirement plan trust fund from property of the estate, it has not been established on the present record that the Debtor's IRAs are so qualified. Although the Debtor, in his Brief, assumes that his IRAs are "qualified" under ERISA, this fact is not among those stipulated to by the parties.[6]

Neither does the Debtor, in his Brief, cite to any legal authority to support his contention that his IRAs are "ERISA-qualified." The requirements for an Individual Retirement Account are found in § 408(a) of the Internal Revenue Code, 26 U.S.C. § 408(a). Contributions to a qualified individual retirement plan are deductible from income for federal tax purposes 26 U.S.C. §§ 219(a), 219(e)(1). 26 U.S.C. § 408 was enacted as part of ERISA in 1974 and refers to some of the provisions and requirements of ERISA. Pub.L. No. 93–406, § 2002, 88 Stat. 839, 958–59 (1974); and 26 U.S.C. § 408(e)(2)(A). However, it appears, from a review of ERISA, that its provisions are limited to employee benefit plans established by an employer or an employee organization. 29 U.S.C. § 1003(a).[7] In addition,

a review of the legislative history of § 408 suggests that it was enacted to provide comparable tax advantages to persons not participating in an ERISA qualified plan.[8] Thus, it would appear, at least in the mind of Congress, that an IRA was designed to be an alternative to, and not the same as, an ERISA-qualified pension plan. *Accord, Board of Trustees of Cedar Rapids Pediatric Clinic, P.A., Pension Plan v. Continental Assurance Co.,* 690 F.Supp. 792, 796 (W.D.Ark.1988) (ERISA does not cover IRAs since they are not established or maintained by employers or employee organizations). *But see Whalen v. National Metals,* 1989 WL 36722, U.S.Dist. LEXIS 11470, (N.D.Ala.1987) (IRA account is a pension plan within the meaning of ERISA where the employer issued check to employee for deposit in IRA account).

In addition, the significance of an IRA's "ERISA-qualification" is uncertain. The Debtor suggests that, if a pension plan is ERISA-qualified, then it is exempt from attachment by creditors. It is true that a number of courts have concluded that an ERISA-qualified pension fund may be levied upon by the employee/beneficiary's creditors. *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980) (pension fund); and *Commercial Mortgage Insurance, Inc. v. Citizens National Bank,* 526 F.Supp. 510 (N.D.Tex.1981) (pension and profit sharing funds). *See Threewitt, supra,* 24 B.R. at 929 and cases cited therein. *See also Graham, supra,* 726 F.2d at 1273 (ERISA-required anti-alienation clauses may preclude garnishment of pension benefits authorized by state law, but do not preclude inclusion of benefits in debtor's bankruptcy estate). *But see Goff, supra,* 706 F.2d at 583; and *Vogel, supra,* 78 B.R. at 194 (ERISA provides tax benefits for qualified pension plans but does not estab-

---

6. Section 408(a) of the Internal Revenue Code sets forth seven (7) requirements for inclusion in a trust instrument before it can qualify as an IRA trust. 26 U.S.C. § 408(a).

7. "Employee benefit plan," "employer," and "employee organization" are terms defined at 29 U.S.C. §§ 1002(3), 1002(5), and 1002(4), respectively.

8. *See* H.REP. NO. 807, 93rd Cong., 2d Sess., pt. 1 at 7, pt. 2 at 11 and 32, reprinted at 1974 U.S. CODE CONG. & ADMIN. NEWS 4639, 4675, 4699, 4791. The House Report states that the proposed bill deals with the problem "by making available a special deduction for amounts set aside for retirement by employees who are *not covered by a qualified plan* (emphasis added). *Id.* at 4791.

lish a federal exemption of employee/beneficiary's interest in pension plan funds). However, the Debtor has cited no authority to indicate that IRAs are likewise exempt by operation of ERISA.

The Debtor also argues that his IRA is exempt from creditors' attachment under 42 Pa.C.S. § 8124(b)(1)(vii)[9] and, thus, is excludable from the Debtor's estate pursuant to § 541(c)(2). *See Marine Midland Bank, supra,* 532 F.Supp. at 730; and *Rosenfield, supra.* However, for the reasons discussed above, we conclude that § 541(c)(2) is limited to restrictions on the transfer of a debtor's interest which are enforceable under state spendthrift trust law. Thus, § 541(c)(2) does not exclude property exempt from attachment by state statute. In addition, we · have difficulty accepting the Debtor's suggestion that property is excluded from the bankruptcy estate because it is exempt from execution under state exemption law. If the debtor wishes to take advantage of a state exemption law, he may do so by electing the state exemptions per 11 U.S.C. § 522(b)(2)(a).[10] He should not be able to obtain his state exemptions in addition to his federal exemptions merely by invoking § 541(c)(2). Here, the Debtor has chosen the federal exemptions. 11 U.S.C. § 522(b)(1). *Compare In re Fill,* 84 B.R. 332 (Bankr.S.D.N.Y.1988); (IRA exempt under N.Y. exemption statute); *In re Worthington,* 28 B.R. 736 (Bankr.W.D.Ky.1983) (IRA exempt un-

der Kentucky law); and *In re Gillett,* 46 B.R. 642 (Bankr.S.D.Fla.1985) (IRA not exempt under Florida law).

We understand that there are arguments to be made in favor of a broader reading of the § 541(c)(2) exclusion than we believe is appropriate. First, as noted by the courts in *Threewitt, supra,* and *Pruitt, supra,* Congress did not expressly limit the applicability of § 541(c)(2) to spendthrift trusts. In addition, by limiting the § 541(c)(2) to restrictions enforceable under state spendthrift trust law, pension and retirement funds which may be exempt from attachment by creditors by operation of ERISA may be subject to the claims of such creditors when the employee-beneficiary files a bankruptcy petition.

Finally, limitation of the § 541(c)(2) exclusion to restrictions enforceable under state spendthrift trust law works to the disadvantage of employees who are either self-employed or whose employers do not offer pension plans. *See Clark, supra,* 711 F.2d at 23 (Becker, J., conc. op.). A pension plan provided by an employer may be excluded from the debtor's estate if it contains restrictions on transfer which are enforceable under state spendthrift trust law. *Hysick, supra,* 90 B.R. at 774; and *Roberts, supra,* 81 B.R. at 374. However, the employee or self-employed person whose retirement savings are in IRAs is not afforded a similar exclusion.[11] *But see Goff,*

---

**9.** 42 Pa.C.S. § 8124(b)(1)(vii) provides in pertinent part that:

(b) Retirement funds and accounts.
(1) ... the following money or other property of the judgment debtor shall be exempt from attachment or execution on a judgment:

. . . . .

(vii) Any retirement or annuity fund of any self-employed person (to the extent of payments thereto made while solvent, but not exceeding the amount actually excluded or deducted as retirement funding for Federal Income Tax purposes) and the appreciation thereon, the income therefrom and the benefits or annuity payable thereunder.

**10.** Even if 42 Pa.C.S. § 8124(b)(1)(vii) were applicable here, it is uncertain whether the Debtor's IRAs would qualify under its provision since there has been no evidence presented to determine if the Debtor's payments to his IRAs were made while he was solvent or if the amounts contributed to the Debtor's IRAs were

actually deducted as retirement funding for federal income tax purposes.

**11.** In his concurring opinion in *Clark, supra,* 711 F.2d at 23–24, Judge Becker notes that
[t]he majority concludes that "[t]he exemption of *future* payments [under § 522(d)(10)(E)] ... demonstrates a concern for the debtor's long-term security which is absent from the statute." I have substantial doubts that the majority's reasoning effectively penalizes self-employed individuals for the form in which their retirement assets are held. The majority's holding will not affect employee pension and annuity plans created by employers, because the assets of such plans would not be included in the debtor's estate under section 541, and thus cannot be reached by the trustee. The assets of a Keogh plan, in contrast, are clearly assets of the estate. Thus Congress's putative lack of concern for the long-term security of the debtor works to the detri-

*supra,* 706 F.2d at 588–89 (bankruptcy law may distinguish between revocable self-settled pension plan and an employer created-and-controlled-plan). However, we believe that the exemption provided by § 541(c)(2) is a narrow one which should not be extended beyond its intended meaning.

We have determined that § 541(c)(2) applies to restrictions on the transfer of a debtor's beneficial interests in a trust where such restrictions are enforceable under state spendthrift trust law. We must now determine if the Debtor's interest in his IRAs meet this criteria.

II. THE RESTRICTIONS ON TRANSFER CONTAINED IN THE DEBTOR'S IRAs ARE NOT ENFORCEABLE UNDER PENNSYLVANIA SPENDTHRIFT TRUST LAW; THEREFORE, THE DEBTORS' IRAs ARE PROPERTY OF HIS ESTATE

█ Section 541(c)(2) is not limited to traditional spendthrift trusts, but also applies to pension funds which exhibit the characteristics of a spendthrift trust. *McClean, supra,* 762 F.2d at 1204 (pension fund not property of estate where restrictions on transfer "indistinguishable in critical respect" from spendthrift provisions enforceable under state law); and *Hysick, supra,* 90 B.R. at 777 (pension plan that would constitute a valid spendthrift trust under Pennsylvania law is not property of the estate). *See also In re Richardson,* 75 B.R. 601 (Bankr.C.D.Ill.1987) (pension plan); *Vogel, supra,* 78 B.R. at 194 (Keogh plan); *In re Pettit,* 61 B.R. 341 (Bankr.W. D.Wash.1986) (employee stock option plan); and *In re Kwaak,* 42 B.R. 599 (Bankr.D. Me.1984) (stock bonus and profit sharing

plan). However, we conclude here that the restrictions on transfer of the Debtor's IRAs in issue here would not be enforceable under Pennsylvania spendthrift trust law. As a result, the Debtor's interest in the IRAs is included in his estate.

█ A spendthrift trust is one that restricts both the beneficiary's ability to alienate his interest in the fund and his creditor's ability to seize the property in satisfaction of his debts. *Wilson v. United States,* 372 F.2d 232, 234 (3d Cir.1967); and *Riverside Trust Co. v. Twitchell,* 342 Pa. 558, 20 A.2d 768 (1941). *See also Kutz v. Nolan,* 224 Pa. 262, 73 A. 555 (1909). A spendthrift trust restrains both voluntary and involuntary transfers of the beneficiary's interests. *In re Keeler's Estate,* 334 Pa. 225, 229–30, 3 A.2d 413 (1939). *See also Kwaak, supra,* 42 B.R. at 602. Spendthrift trusts are designed to provide for the maintenance of the beneficiary, while protecting the fund from both the beneficiary's improvidence and his or her creditors. BLACK'S LAW DICTIONARY 1256 (5th ed. 1979). The validity of spendthrift trusts has long been recognized in Pennsylvania. *Commissioner v. Estate of Ellis,* 252 F.2d 109, 114 (3d Cir.1958).

In contrast to such trust devices, an IRA is a tax-deferred savings plan authorized by 26 U.S.C. § 408 of the Internal Revenue Code. *In re Howerton,* 21 B.R. 621 (Bankr.N.D.Tex.1982). Individuals are permitted to deduct IRA contributions from their taxable income. Funds placed in an IRA pursuant to 26 U.S.C. § 219 are taxed as ordinary income at the time of distribution. 26 U.S.C. § 408(d).[12] Favorable tax treatment was accorded to IRAs in order to encourage retirement savings. *See Rosenfield, supra,* 13 PHILA. CO.RPTR. at 561–562, 37 Pa.D. & C.3d 621.

---

ment only of self-employed debtors—a result I find inconsistent with Congress's manifest solicitude for retirement benefits for self-employed individuals.

**12.** The Internal Revenue Code had provided that distributions made before a taxpayer reached age 59½ years of age would be subject to a ten (10%) percent penalty tax. *Heisey, supra,* 88 B.R. at 49; and *Rosenfield, supra,* 13 PHILA. CO.RPTR. at 561, 37 Pa.D. & C.3d 621.

It appears that the provision imposing this ten (10%) percent tax penalty has been repealed. 26 U.S.C. § 408(f). Pub.L. 99–514, Title XI, § 1123(d)(2), Oct. 22, 1986, 100 Stat. 2475. However, the Trustee appears to concede that the Debtor here would be subject to a ten (10%) percent tax on premature distribution of an IRA account. *See* Stipulation of Facts Regarding Trustee's Objection to Debtor's Claim of Exemption, ¶ 12 and Exhibit 6.

■ The Debtor's IRAs do not qualify as spendthrift trusts for a number of reasons. First, a settler may not generally create a spendthrift trust for his or her own benefit. *In re Bowers' Trust Estate*, 346 Pa. 85, 89, 29 A.2d 519 (1943); *LIT Corp. v. Flint*, 333 Pa. 350, 353–54, 5 A.2d 126 (1939); *Rienzi v. Goodin*, 249 Pa. 546, 95 A. 259 (1915); *Hahn v. Hutchinson*, 159 Pa. 133, 139–40, 28 A. 167 (1893). In invalidating such trusts, the courts find that it would be against public policy to allow a debtor to isolate property from the claims of creditors while enjoying the benefits of such property. *Posner v. Sheridan*, 451 Pa. 51, 62, 299 A.2d 309 (1973); *In re Modridge's Estate*, 342 Pa. 308, 311–12, 20 A.2d 307 (1941). *Cf. Goff, supra*, 706 F.2d at 588 (applying Texas law); *In re Slezak*, 63 B.R. 625 (Bankr.W.D.Ky.1986) (applying Kentucky law); *O'Brien, supra* (applying Virginia law); and *Kwaak, supra* (applying Maine law).

In addition, a valid spendthrift trust must restrict the beneficiary's ability to transfer trust funds as well as the creditors' rights to levy upon such assets. *See* page 919 *supra*. Article IX of the IRA Agreements in issue provides that benefits paid to a participant shall not be subject to the claims of the creditors.[13] However, there is no provision in the IRA Agreements or law which prohibits withdrawal of the funds which the Debtor deposited in his IRA account. The only possible adverse consequence of such a withdrawal would be a ten (10%) percent penalty tax.[14]

Bankruptcy courts considering this issue ultimately focus on the degree of control which the beneficiary enjoys with respect to the retirement account. *See Goff, supra*, 706 F.2d at 589 (Keogh plan not a spendthrift trust where debtor may withdraw funds subject only to a ten (10%) percent tax penalty); *Lichstrahl, supra*, 750 F.2d at 1490 (pension plan not a spendthrift trust where beneficiary has power to terminate plan and receive assets); *In re Goldberg*, 59 B.R. 201, 203 (Bankr.N.D. Okla.1986) (Keogh plan not a spendthrift trust where beneficiary could terminate at will). *Compare Vogel, supra*, 78 B.R. at 195 (Keogh plan qualifies as spendthrift trust where debtor cannot withdraw funds without wife's consent); and *In re Strehlow*, 84 B.R. 241, 244 (Bankr.S.D.Fla.1988) (trust not a valid spendthrift trust where debtor and cousin exercised unfettered dominion and control over plan). As stated by Chief Judge Twardowski of this court in *Hysick, supra*, 90 B.R. at 774, "the question is not whether the ... plan contains provisions restraining alienation ... but the manner and degree in which debtor's access is limited."

A beneficiary who also serves as settlor of a trust normally enjoys a great degree of control over trust funds.[15] Thus, some courts have concluded that spendthrift provisions contained in employer-created pension plans were effective, while similar provision in self-settled plans were not. *See Goff, supra*, 706 F.2d at 589 and cases cited therein. However, it appears that, in Pennsylvania, a self-settled trust may be enforceable if the settlor can show that he has no further ownership in or control over the trust *res. Roberts, supra*, 81 B.R. at 374; *Benedict v. Benedict*, 261 Pa. 117, 120, 104 A. 581 (1918); and *Nolan v. Nolan*, 218 Pa. 135, 67 A. 52 (1907). Thus, we

---

**13.** We do not here determine the effect or enforceability of such a provision.

**14.** We do not consider the fact that the Debtor's distribution would be taxed as ordinary income to be an "adverse tax consequence," since these funds were not taxed as income to the Debtor in the year of receipt. 26 U.S.C. § 219.

**15.** The bankruptcy court in *O'Brien, supra*, 50 B.R. at 72, thusly notes that the beneficiary of a self-settled trust holds both a legal and equitable interest in the trust:
> The equitable interest arises out of the debtor's status as *cestui que trust. See Broaddus v.*

*Gresham*, 181 Va. 725, 732, 26 S.E.2d 33, 35 (1943) (where the court held that a beneficiary of a trust had an equitable interest in trust property). The legal interest arises out of the debtor's status as settlor of the trust with the right to revoke the trust at any time and recoup the trust *res* and dividend reinvestiture. This latter right is a right by contract and, thus, is legal in nature. *See In re Watson*, 13 B.R. 391, 392 (Bankr.M.D.Fla.1981) (debtor had 'legal right' to exercise withdrawal privileges).

concur with the conclusion of Chief Judge Twardowski that we should not make "the self-settled nature of the trust the *sine qua non* of our analysis." *Hysick, supra,* 90 B.R. at 775.

■ Where a debtor's access to trust funds is conditioned upon termination of employment, death, or disability, then an otherwise valid spendthrift trust will be enforceable. *Hysick, supra,* 90 B.R. at 776. However, a debtor's access to his IRA funds is not conditioned upon such dire consequences. The possible imposition of a ten (10%) percent tax penalty does not substantially limit the debtor's access to or control over his IRAs. *See Goff, supra,* 706 F.2d at 589 (ten (10%) percent tax penalty for withdrawal of funds in Keogh Plan is an insufficient limitation on control to render same a spendthrift trust fund). Bankruptcy courts considering this issue have thus concluded that IRAs do not qualify as spendthrift trusts and hence are not excluded from property of the estate by operation of Section 541(c)(2). *Heisey, supra; Gillett, supra; In re Schwartz,* 58 B.R. 606 (Bankr.N.D.Iowa 1984); and *Howerton, supra. Cf. In re Dunn,* 5 B.R. 156 (Bankr.N.D.Tex.1980) (decided under Bankruptcy Act). In light of the degree of control which the Debtor may exercise over the assets in his IRA accounts, we conclude that the IRA Agreements in issue do not place restrictions on the transfer of Debtor's assets which would be enforceable under Pennsylvania spendthrift trust law.

### E.   CONCLUSION

For the reasons set forth above, we conclude that 11 U.S.C. § 541(c)(2) only excludes, from property of the debtor's estate, a restriction on the transfer of a debtor's beneficial interest in a trust which would be enforceable under state spendthrift trust law. While the IRA Agreements in issue contain "spendthrift" provisions purporting to restrict a creditor's rights to attach funds in the IRAs, given the degree of control which the Debtor enjoys with respect to his IRA accounts, we conclude that these IRAs are not enforceable spendthrift trusts under Pennsyl-

vania spendthrift trust law. We do not here address the issue of whether the Debtor's IRAs are exempt from attachment under 42 Pa.C.S. § 8124(b)(1)(vii). We conclude only that the Debtor's IRAs are property of his bankruptcy estate. An appropriate Order will be entered.

### ·ORDER

AND NOW, this 18th day of January, 1989, after consideration of the Stipulation of Facts and respective Briefs submitted by the Debtor and Trustee relative to the Trustee's Objections to the Debtor's claims of exemptions in this matter, it is hereby

ORDERED AND DECREED that the Debtor's request to exclude his IRAs from property of the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2) is DENIED.